## ST. LOUIS REFRIGERATING & COLD STORAGE CO. v. UNITED STATES.
### No. 13477.

Circuit Court of Appeals, Eighth Circuit.
June 19, 1947.

Harold S. Cook, of St. Louis, Mo. (J. M. Blayney and Blayney, Barrett, Bedal, Cook & Fairfield, all of St. Louis, Mo., on the brief), for appellant.

S. Dee Hanson, Sp. Asst. to the Atty. Gen. (Sewell Key, Acting Asst. Atty. Gen., Lee A. Jackson, Sp. Asst. to the Atty. Gen., Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by appellant to recover $4,572.32, being a portion of the income taxes assessed against and paid by it for the year ending April 30, 1942. On trial the court entered judgment denying recovery and from the judgment so entered this appeal was taken. The parties will be referred to as they were designated in the trial court. The facts were stipulated and found by the court as stipulated.

In January, 1932, one J. C. Walton, being indebted to plaintiff in excess of $25,000, gave his five promissory notes of $5,000 each, due two, three, four, five and six years after date respectively, the notes bearing interest from date at the rate of 6 per cent per annum. On October 23, 1932, Walton and his wife assigned to plaintiff as collateral security to these notes three certain life insurance policies on the life of J. C. Walton, the policies having a face value of $25,000, Walton's wife being the named beneficiary therein. The assignment was

limited to the extent of any indebtedness due the assignee at the time of the payment of the policies, it being recited in the assignment that, "The interest of the assignee in the policies hereby assigned shall include any and all indebtedness which may now or at any time hereafter be owing to the said assignees and which may exist at the time of the settlement of the policies. The remainder of said policies, if any, shall be not affected by this assignment." At the time of the assignment there were loans against the policies in the sum of $6,734.89, and the cash surrender value of the policies at that time·was $8,107. After the assignment the interest accruing annually on the loans was added to the principal of the loans and all premiums thereafter coming due on the policies were paid by the plaintiff. During its fiscal year ending April 30, 1933, plaintiff charged off as a bad debt the $25,000 of indebtedness of Walton evidenced by these notes, and in its tax return for that year deducted the $25,000 as a bad debt, thereby reducing its tax liability. Walton died December 17, 1941, and during its fiscal year ending December 30, 1942, plaintiff recovered on its indebtedness against Walton to the extent of $18,-188.70, representing the net proceeds from the three life insurance policies assigned to it by Walton.

The Commissioner of Internal Revenue assessed and plaintiff paid a deficiency based on the inclusion in plaintiff's gross income for that year of the proceeds of the Walton insurance policies, less the premiums paid by plaintiff. Plaintiff filed a claim for refund of the taxes attributable to the inclusion in gross income of the proceeds of the insurance. The claim was rejected and this action followed.

The printed assignment of the policies recited the consideration of $1. The actual value of any additional consideration for the assignment was neither stipulated nor proved. The court concluded as a matter of law that the amounts received by the taxpayer under the assignment of the life insurance policies constituted a recovery of bad debt losses previously deducted and were taxable income in the year received, and entered judgment in favor of defendant.

Plaintiff seeks reversal on the ground that the proceeds of the policies received by it were not taxable income under the provisions of Section 22(b) (1) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 22(b) (1), because (1) it paid no valuable consideration for the assignment, or (2) if there was a valuable consideration paid it consisted of the amount originally advanced by it to Walton, and as the proceeds of the insurance policies were less than the consideration plus the premiums paid by plaintiff subsequent to the assignment, they were exempt under the provisions of Section 22(b) (2) of the Revenue Act.

Section 22 of the Internal Revenue Code defines gross income as including various specifically named sources of income and as including income derived "from any source whatever." Section 116(a) of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Code, § 22(b) (12), provides that income attributable to the recovery during the taxable year of a bad debt is taxable to the extent of the amount of recovery. The recovery of the debt of Walton previously deducted as worthless, clearly constitutes taxable income in the year of recovery unless, as contended by plaintiff, it was exempt as proceeds received under a life insurance contract paid by reason of the death of the insured.

Section 22(b) of the Internal Revenue Code provides for certain exclusions from gross income as follows:

"Sec. 22 * * * (b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

"(1) Life insurance. Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income);

"(2) Annuties, etc. * * * In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract,

or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph; * * *."

■ The policies on Walton's life were written in favor of his wife. These policies by written assignment were pledged to plaintiff as collateral security for the Walton notes. Under the law of Missouri life insurance policies were subject to pledge as security for a debt. Missouri State Life Ins. Co. v. Cal. State Bank, 202 Mo.App. 347, 216 S.W. 785; First Nat. Bank of Beeville, Tex. v. Security Mut. Life Ins. Co. of Binghamton, N. Y., 283 Mo. 336, 222 S.W. 832. The assignment here purports in terms to transfer title. Its only purpose, however, was to pledge the policies as security for the insured's indebtedness. This is conclusively shown by the recitals in the assignment itself and by the surrounding facts and circumstances and it should be so construed. Conrad v. Fisher, 37 Mo. App. 352, 8 L.R.A. 147; Thomson v. Thomson, 8 Cir., 156 F.2d 581; Amick v. Empire Trust Co., 317 Mo. 157, 296 S.W. 798, 53 A.L.R. 1064; Hodge v. Truax, 138 Wash. 360, 51 P.2d 357, 103 A.L.R. 420. The policies themselves were transferred to the possession of the plaintiff and held as security. Under the terms of the assignment it is clear that the right of the plaintiff was dependent upon the existence of the indebtedness. Had it been paid the beneficiary named in the policies would have been entitled to the proceeds payable on the insured's death. Thomson v. Thomson, supra. There was no change in the beneficiary and so far as the insurance contracts were concerned plaintiff was not entitled to the proceeds of the policies. In order that it might receive such proceeds it was necessary to make proof of the pledge of the policies and proof of an unpaid indebtedness. The pledge was subsidiary to the principal debt and collateral to that debt, and if collection were made on the policies it would go to the credit of the principal debt, or if that debt had been paid any collection made under the policies would have gone to the debtor's beneficiary named in the policies. We think that the amount received was not received by plaintiff under a life insurance contract paid by reason of the death of the insured within the meaning of Section 22(b) (1). It was received because of the pledge contract.

■■ So far as the right to exclude this recovery from plaintiff's gross income is concerned, Section 22(b) (2) cannot be invoked as sustaining plaintiff's contention. The transfer, as has been observed, was not an absolute transfer, but merely a pledge, and plaintiff has not sought to have excluded from its gross income the consideration, if any, paid for the assignment. It in fact insists that the transfer was not for a valuable consideration. It contends, however, that if there was a valuable consideration it was the original debt. But manifestly, the face value of the notes did not represent the "actual value" of the consideration for the assignment. The notes were not executed as a part of the same transaction but had been executed long before the execution of the assignment. They were not due and there was no claim that there had been any agreement to extend the time of payment. They were certainly not surrendered at the time of the assignment but, as has been pointed out, the assignment was for the specific purpose of pledging the policies as collateral security for the payment of the notes. Section 22 contemplates the exclusion of the amount received under a life insurance contract paid by reason of the death of the insured. Under this section only the beneficiary named in the policy can be said to receive the proceeds of the policy under the insurance contract. If there has been a transfer of the policy, the transferee is not entitled to have the proceeds received by reason of the payment of the policy excluded from his gross income but only the actual value of the consideration paid for such transfer.

Plaintiff relies quite strongly on the case of Durr Drug Co. v. United States, 5 Cir., 99 F.2d 757, 759, 119 A.L.R. 1192, but that case is strikingly dissimilar in its facts. There the employer prevailed upon an employee who was indebted to it in a sum in excess of $15,000 to insure his life for that amount, naming the employer as beneficiary, and with the understanding that the policy would be delivered to the employer

and that it would pay all premiums. The policy was so delivered and the premiums were paid by the employer without any charge against the employee, and on the death of the insured the employer collected the face amount of the policy. In holding that the insurance money collected was exempt from income tax the court among other things said: "From the inception of the insurance contract until the maturity of the rights thereunder, appellant was the sole beneficiary and the owner thereof. At no time was Wylie in the position of owner or beneficiary, and at no time did he have any interest therein which he could transfer or assign."

In other words, the policy covered the employer's insurable interest in its employee and when the insured died the proceeds were paid to the beneficiary and clearly constituted the proceeds of insurance. The court in the course of the opinion observed that, "* * * in order for the proceeds paid by reason of the death of the insured to be taxable as income, the contract must have been transferred by assignment or otherwise, so that it would come within the exception."

We think the insurance contract when it was transferred and pledged lost its character as insurance in the hands of the pledgee within the meaning of the statute. It became simply collateral security.

It has been held that the term "recovery" as applied to bad debts includes the proceeds of the sale of the debt as well as the proceeds from a collection of the debt. Here the recovery was on the collateral security and the incidental fact that the proceeds of this insurance policy would have been exempt to the beneficiary named does not mark it as exempt where it has become a matter of barter rather than a matter of insurance.

The plaintiff having charged off a bad debt and received a tax deduction in consequence, and having later received payment of the debt or a part of it, the collection became income regardless of the fact that it was received from insurance policies in which it was not named as a beneficiary. The judgment appealed from is therefore affirmed.