DESKS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31660.   Promulgated June 27, 1952.

*Max H. Zabronsky, Esq.*, for the petitioner.
*Arthur L. Nims, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* There are two questions raised in this proceeding: (1) are the life insurance premiums allowable deductions under section 23 (a) of the Code, and (2) is $12,151.33 received from the insurance proceeds in the fiscal year ended June 30, 1947, taxable income in its entirety.

Hale became indebted to Standard for $60,102.14 and assigned to Standard a $60,000 life insurance policy on Chauvin, Hale's president. Hale went into bankruptcy, and some of its officers and employees formed petitioner corporation, which engaged in the same business. In order to induce Standard to furnish merchandise on credit, petitioner on July 1, 1936, agreed to pay the insurance policy's premiums and interest, regardless of the termination of the consignment provisions. This was an arm's length enforceable contract and without it, Standard would never have extended further credit to petitioner, because of its credit experience with Hale.

In the latter part of 1939, Hale's trustee in bankruptcy paid a 20.3 per cent first and final dividend to creditors, whereby Standard received $12,200.73. At this time petitioner was still a customer of Standard and, in accordance with its 1936 contract, paying the premiums on the insurance policy. A second agreement was executed on December 14, 1939, whereby Standard agreed to remit to petitioner the insurance policy proceeds in excess of $48,081.47, Hale's remaining, outstanding principal indebtedness without interest.

Petitioner contends that there was no consideration for this second agreement, and it constitutes a gratuity by Standard. Under the original 1936 contract, petitioner could have terminated its consignment purchases on 5 days' notice and was not required to purchase any minimum amount. Petitioner was apparently a regular customer of Standard from 1936 through 1947, and relied on this second agreement for over six years. To follow petitioner's contention ignores the arm's length nature of this continuing business relationship. Cf. Williston on Contracts, rev. ed. 1936, vol. 1, sec. 137 A, p. 485, sec. 144, p. 514, sec. 139, p. 494. Moreover, the express language of the 1939 contract states that it arises out of an equitable claim of petitioner, which is settled thereby. An equitable obligation can be as binding and enforceable as a legal obligation. The settlement of a disputed claim furnishes adequate consideration by itself. Cf. Williston, *supra*, sec. 130 at p. 445, sec. 147, p. 520.

In fact, Standard felt bound by this agreement and accordingly remitted to petitioner $12,151.33, its share of the insurance proceeds.

We hold that under the 1939 agreement, petitioner had a contractual enforceable right in the insurance proceeds.

## Issue 1.

Petitioner contends that it is entitled to deduct premiums in 1946 and 1947 as an ordinary and necessary business expense to obtain adequate credit. However, even though an item is an ordinary and necessary business expense under section 23 (a) (1) (A.), if the provisions of section 24 (a) (4) are met, the deduction is not allowed. Section 24 (a) (4) of the Internal Revenue Code provides:

SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \* \* \*

(4) Premiums paid on any life insurance policy covering the life of any officer or employee, or of any person financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary under such policy;

We find that in order to obtain credit originally, petitioner had to obligate itself in the 1936 contract to pay the insurance policy's premiums and interest. But under the 1939 contract which was in force and effect during the two taxable years which we have before us, petitioner became a beneficiary of the $60,000 insurance policy to the extent of the excess above $48,081.47.

In *J. H. Parker*, 13 B. T. A. 115, premiums were not deductible even though the taxpayer was not named beneficiary, and there was only a mere possibility of the taxpayer's being a beneficiary under a creditors' agreement. Similarly, premiums on an insurance policy held as security for a loan by a taxpayer's creditor were not deductible. *Rieck* v. *Heiner*, 25 F. 2d 453, certiorari denied 277 U. S. 608; *Edwin M. Klein*, 31 B. T. A. 910, 919, affd. 84 F. 2d 310. Petitioner's interest in the instant case is more direct. We hold that petitioner is "directly or indirectly a beneficiary" under section 24 (a) (4) and the premiums are not deductible as ordinary and necessary business expenses. On this issue respondent is sustained.

## Issue 2.

Petitioner contends that the $12,151.33 received from the proceeds of the insurance policy is a gift, while respondent determined it was ordinary income. Standard paid this sum to petitioner pursuant to a written contract and did not intend to make a gift. Therefore, the $12,151.33 could not be a gift for tax purposes, which requires an intent on the part of the donor to make a gift. *David Herbert Botch-*

*ford*, 29 B. T. A. 656, affd. 81 F. 2d 914; *Willis L. Garey*, 16 B. T. A. 274.

The proceeds of a life insurance paid by reason of the insured's death are exempt from taxation generally. Section 22 (b) (1), Internal Revenue Code. However, when the policy has been transferred for a valuable consideration, the amounts by which the insurance proceeds exceed the consideration and premiums paid are included in gross income. Section 22 (b) (2), Internal Revenue Code.

Under the 1939 contract, petitioner received an interest in the insurance proceeds. The consideration for this interest was a valuable one and an intangible benefit of its business dealings with Standard. These business dealings encompassed petitioner's purchasing merchandise from Standard on consignment and payment of insurance proceeds and interest on the insurance policy. Cf. *St. Louis Refrigerating & Cold Storage Co.* v. *United States*, 162 F. 2d 394.

From January 1937 until Chauvin's death in August 1946, petitioner paid premiums of approximately $31,732.20. However, petitioner claimed as deductions on its returns all those premiums. Under our decision on Issue 1, the deduction of premiums paid subsequent to the 1939 contract were improperly claimed as deductions. But these premiums are, nevertheless, still to be excluded from the insurance policy proceeds in determining the amount included in gross income. In *Stroud & Co.*, 45 B. T. A. 862, 868, we said the following:

The respondent has added to the net proceeds of the policies, after deducting their cost, the sum of $6,120.64 representing premiums paid by the New Jersey company during 1932 to 1935, inclusive, and also $140.18, so paid by it in 1936. Apparently he seeks to justify his action on the ground that such amounts were claimed and allowed as deductions in previous years.

We find no statutory authority for respondent's action in adding the premiums to petitioner's gross income. Section 22 (b) (2) specifically states that the actual value of the consideration and the amount of premiums and other sums subsequently paid by the transferee shall be exempt under section 22 (b) (1). The premiums here were paid by the transferee (the petitioner's predecessor) and hence serve to increase the exemption.

As we said in *Charles E. Lambeth, supra*, "we are not dealing with the ordinary case but with the proceeds of life insurance contracts in respect of which Congress has seen fit to legislate specifically." We also observed:

The fact that the petitioner might be permitted a deduction in some year by reason of the worthlessness of the corporate stock does not change the situation, for Congress has seen fit to deal specifically with the proceeds of life insurance and we must apply the statute as it is enacted.

In the case at bar no reference is made in the statute to deductions claimed or allowed relating to such "premiums and other sums subsequently paid by the transferee" either during the taxable year or theretofore. The language of the statute is clear and unambiguous. We must apply it as we find it. Therefore, the amount of the premiums aggregating $6,269.82 should be deducted from the $105,220.30, computed by the respondent to be the taxable gain on the life insurance proceeds.

As we have already pointed out, petitioner claims that none of the $12,151.33 should be included in petitioner's income for 1947 because is represented a gift from Standard to petitioner. That contention we have not sustained.

Petitioner contends in the alternative, however, that:

If it should be held that petitioner had a beneficial interest in the policy of life insurance, then the amount of $12,151.33 received by petitioner from Standard Furniture Co. would not be subject to tax, because the premiums paid by petitioner from 1936 to 1947 amounted to approximately $37,000 and far exceeded the recovery by petitioner. This is so even though petitioner deducted the premium payments from its gross income.

As we have pointed out elsewhere petitioner did not acquire a beneficial interest in the insurance policy until the latter part of 1939 and therefore only premiums which it paid thereafter would represent cost to it of its interest in the policy, yet it is perfectly clear from the facts which have been stipulated that the annual premiums which petitioner paid to keep the policy in force after it acquired a beneficial interest in the policy in 1939 exceeded by a substantial amount the $12,151.33 which petitioner collected out of the proceeds of the policy upon Chauvin's death in 1946. The effect of our holding therefore is that none of the $12,151.33 insurance proceeds is includible in petitioner's income because the cost to petitioner of recovering this amount was greater than the amount itself.

*Decision will be entered under Rule 50.*