WAYNESBORO KNITTING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39433. Filed November 30, 1954.

*Frederick Schwertner, Esq.*, for the petitioner.
*Edward Pesin, Esq.*, for the respondent.

### OPINION.

RICE, *Judge:* This proceeding involves a deficiency in income tax determined against the Waynesboro Knitting Company (hereinafter referred to as petitioner) in the amount of $9,953.05 for the taxable year 1948.

The sole issue to be decided is whether petitioner derived taxable income in 1948 from the receipt of the proceeds of certain life insurance policies which, among other assets, were transferred to petitioner in 1931 as restitution for the defalcations of one of its officers.

All of the facts were stipulated, are so found, and are incorporated herein by this reference.

Petitioner is a Pennsylvania corporation, and filed its income tax return for the year here involved with the collector of internal revenue for the first district of Pennsylvania. Petitioner maintained its books of account and filed its tax returns on the accrual basis.

During the years 1926 to 1931, inclusive, petitioner suffered losses arising out of embezzlements by one of its officers (hereinafter referred to as "the officer"), in the aggregate amount of $488,010.60. Upon discovery of these losses in 1931, the officer transferred all of his assets to petitioner. These assets had a fair market value of $258,031.46 at the time of transfer and consisted of the following:

| | |
|---|---:|
| Life insurance on the officer's life | $455. 20 |
| Securities | 4, 020. 00 |
| Real estate | 22, 446. 23 |
| Notes | 231, 110. 03 |
| Total | 258, 031. 46 |

In consideration of this partial restitution, petitioner relinquished any further claims which it had against him, arising out of his defalcations, and required no further payments thereon.

Petitioner had dismissed the officer from its employment when the embezzlements were discovered. However, after the aforementioned restitution, he was re-employed as general manager because of his ability and business acumen. He remained in such employment until 1939, when he left due to ill health.

Petitioner realized a net loss of $229,979.14 from such defalcations after making allowance for the $258,031.46 fair market value of the assets assigned by him to petitioner in partial restitution. Respondent determined what portion of this net loss should be allocated to each of the years 1926 through 1931, and petitioner filed corporate returns for each of such years in which deductions were claimed for the allocable portions of such loss. The following table discloses that tax benefits of only $66,326.96 were realized from the $229,979.14 net loss:

| Year | Loss as allocated | Net income or net loss after deduction of loss | Portion of loss producing tax benefits |
|---|---:|---:|---:|
| 1926 | $473. 68 | $63, 764. 10 | $473. 68 |
| 1927 | 9, 274. 14 | 112, 207. 75 | 9, 274. 14 |
| 1928 | 6, 091. 43 | 165, 363. 22 | 6, 091. 43 |
| 1929 | 50, 487. 71 | 231, 757. 43 | 50, 487. 71 |
| 1930 | 129, 664. 97 | (152, 939. 62) | None |
| 1931 | 33, 987. 21 | (54, 481. 32) | None |
| Total | 229, 979. 14 | | 66, 326. 96 |

Among the assets assigned to petitioner in partial restitution of its embezzlement losses were seven life insurance policies on the officer's

life. In conjunction with the assignment, petitioner was named the beneficiary of these policies. The total face amount of said policies was $65,000, but they had a total net equity, at the date of assignment, of only $455.20. On that date, loans thereon were outstanding in the amount of $5,703.85. Petitioner repaid such loans on October 31, 1936; and, from the date of the assignment until the officer's death in 1948, petitioner paid $36,340.73 in premiums on the policies. Upon the death of the officer in 1948, petitioner received the $65,000 face amount of such insurance policies.

The following table sets forth the total amounts realized by petitioner on the assets which the officer transferred to it in 1931 in partial restitution of his defalcations:

| | |
|---|---|
| Life insurance | $65,000.00 |
| Securities | 6,845.45 |
| Real estate | 19,450.30 |
| Notes | 60,234.76 |
| | $151,530.51 |

The difference between the amounts realized by the petitioner on the aforesaid real estate and notes and the fair market value of such real estate and notes at the time they were transferred to petitioner by the officer was deducted by petitioner on its returns and allowed by respondent.

Respondent determined that the proceeds of the insurance policies were includible in petitioner's gross income for the taxable year 1948 under section 22 (a) of the Internal Revenue Code of 1939; but that, under section 22 (b),[1] there should be deducted therefrom the sum of the value of the consideration given for such policies in 1931, the outstanding loans repaid in 1936, and the premiums paid from 1931 to 1948. This determination resulted in the addition of $22,500.22 to petitioner's gross income for 1948, computed as follows:

| | | |
|---|---|---|
| Total proceeds of policies | | $65,000.00 |
| Less: | | |
| Consideration upon acquisition | $455.20 | |
| Loans repaid | 5,703.85 | |
| Premiums paid | 36,340.73 | |
| | | 42,499.78 |
| Taxable income | | $22,500.22 |

---

[1] SEC. 22. GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(1) LIFE INSURANCE.—Amounts received under a life insurance contract paid by reason of the death of the insured, * * *

(2) ANNUITIES, ETC.

(A) In General.—* * * In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph. * * *

Petitioner contends that this $22,500.22 constitutes a partial recovery of the embezzlement loss which it had previously suffered. Petitioner maintains that the so-called tax benefit rule of *Dobson* v. *Commissioner*, 320 U. S. 489 (1943), rehearing denied 321 U. S. 231 (1944), and *Birmingham Terminal Co.*, 17 T. C. ·1011 (1951), precludes the taxation of this sum since the embezzlement loss in an amount in excess of such sum had produced no tax benefit when deducted on its returns in 2 earlier years.

However, the tax benefit rule may be invoked only where there is a recovery which is directly attributable to a previous loss which produced no tax benefit. As stated in *Merton E. Farr*, 11 T. C. 552 (1948), affirmed sub nom. *Sloane* v. *Commissioner*, 188 F. 2d 254 (C. A. 6, 1951), "one certain requirement for invoking it is that there be such an interrelationship between the event which constitutes the loss and the event which constitutes the recovery that they can be considered as parts of one and the same transaction." The requirement that there be an "integrated transaction" was made clear by the Supreme Court in *Dobson* v. *Commissioner, supra*, and followed in *Allen* v. *Trust Co. of Georgia*, 180 F. 2d 527 (C. A. 5, 1950), certiorari denied 340 U. S. 814 (1950), a case whose facts are similar to those here involved.

The tax benefit rule is clearly inapplicable here. Petitioner acquired the insurance policies as part of a settlement which completely released its former officer from any liability with respect to his embezzlements. Since the assets received from him as partial restitution were worth substantially less than the amounts embezzled, petitioner took deductions for its net losses on its income tax returns for the years in which the losses were incurred. It is clear that the various assets transferred to the petitioner pursuant to the settlement agreement were irrevocably assigned and did not constitute mere collateral for the payment of the obligation. The obligation was completely extinguished and the transaction closed in 1931 by the settlement agreement. Thereafter, these assets were no longer interrelated with such obligation. The transfer of the assets "was the total termination of the debt and the beginning of a new and separate transaction." The assets "so acquired had their own independent basis for future gain or loss, which was the fair-market value on the date of acquisition." *Allen* v. *Trust Co. of Georgia, supra*. Moreover, petitioner acknowledged that such was the basis of these assets for it correctly used this basis in calculating and deducting further losses on its returns when it sold the real estate and notes at prices less than their fair market value at the date of acquisition. *Federal National Bank of Shawnee*, 16 T. C. 54 (1951), appeal dismissed per curiam 191 F. 2d 402 (C. A. 10, 1951).

When these policies matured upon the death of the insured, petitioner realized gain taxable under section 22 (a) and (b) to the ex-

tent of the excess of the proceeds over the sum of the fair market value of the policies upon acquisition, the loans thereon which were repaid, and the premiums paid. The gain on such policies cannot be considered attributable to the embezzlement loss since such gain flowed not from the officer or his estate but from an insurance investment which was entirely separate and distinct from him. The fact that the policies insured the life of the officer is irrelevant since he neither owned them nor controlled the choice of beneficiary. Had he retained ownership of the policies and assigned them merely as collateral for the payment of the obligation, the proceeds would be considered as a payment thereon. *St. Louis Refrigerating & Cold Stor. Co.* v. *United States*, 162 F. 2d 394 (C. A. 8, 1947). But these policies became the possession of petitioner as part of a settlement which completely extinguished any obligation of the former officer to make further restitution. Petitioner computed its loss pursuant to this settlement and took deductions therefor on its tax returns for the applicable years. Even though some of such deductions failed to produce tax benefits, this can have no effect on the taxability of the gain from such insurance policies, because such gain arose from a transaction entirely separate from petitioner's embezzlement loss.

The cases relied upon by petitioner with respect to the application of the tax benefit rule, either under section 22 (b) (12) or the doctrine of *Dobson* v. *Commissioner, supra*, are not apposite since they relate to situations wherein the subsequent recovery was directly attributable to a bad debt or loss suffered and taken as a deduction in a prior year.

*Decision will be entered for the respondent.*