**WAYNESBORO KNITTING COMPANY,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

**No. 11556.**

United States Court of Appeals Third Circuit.

Argued May 16, 1955.

Decided Aug. 29, 1955.

Frederick Schwertner, Washington, D. C., for petitioner.

Morton K. Rothschild, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

The taxpayer, Waynesboro Knitting Company, appeals from a decision [1] of the tax court sustaining the Commissioner of Internal Revenue's determination of an income tax deficiency of $9,953.05 for the year 1948.

The relevant facts were stipulated. During the years 1926 to 1931, $488,010.60 was embezzled from the taxpayer by one of its officers. When the embezzlements were discovered in 1931, the officer was dismissed and a settlement effected whereby the officer transferred all of his assets to the taxpayer in partial restitution, and the taxpayer relinquished any further claims it had against the officer arising out of his defalcations. The assets transferred had a fair market value of $258,031.46. After the settlement, the officer, because of his ability and business acumen, was rehired by the taxpayer as general manager and worked for the taxpayer until 1939, when he left because of ill health. No attempt was ever made to collect the difference between the $488,010.60 embezzled amount and the $258,031.46 which was the fair market value of the transferred assets. The $229,979.14 difference between these amounts was written off as a loss by the taxpayer, and differing portions of the loss were allocated to each of the years during which the embezzling occurred. Readjustments were accordingly made in the taxpayer's tax returns for the years 1926 through 1931.

Included among the transferred assets were seven life insurance policies on the officer's life. In conjunction with their assignment, the taxpayer was named beneficiary of the policies, which had a total face value of $65,000, although they had a net equity of only $455.20 at the time of transfer. In 1948, when the officer died, the taxpayer received $65,000.

The Commissioner determined that $42,499.78 of the $65,000 was exempt from taxation under Section 22(b) (2) (A) [2] of the Code, but that the remaining $22,500.22 was taxable income under Section 22(a) [3] of the Code. The inclusion of this $22,500.22 in the taxpayer's 1948 taxable income accounted for the assessed deficiency of $9,953.05.

The taxpayer contends that the entire $65,000 is exempt from taxation

1. 23 T.C. 404.

2. "§ 22. Gross Income
   \* \* \* \* \*
   "(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter:
   \* \* \* \* \*
   "(2) Annuities, etc.
   "(A) In general. \* \* \* In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph." Int.Rev.Code of 1939, 26 U.S.C. § 22.

3. Section 22(a) contains the all-encompassing general definition of gross income.

under Section 22(b) (1) [4] of the Code. Its position is that Section 22(b) (2) (A) is only operative "in the case of a transfer for a valuable consideration" and that the transfer of the seven policies in 1931 was not a transfer for valuable consideration.

But it seems clear that the transfer was for a valuable consideration. The officer owed the taxpayer $488,010.60. He was under a legal duty to return this amount of money to the taxpayer. Had he been able to make complete restitution in money payments, the taxpayer would not have been in a position to demand a transfer of the assets in kind.

In return for the officer's transfer of his total assets, the taxpayer relinquished its claim for the $488,010.60. In so doing, of course, there was no passing in a physical sense of a valuable consideration to the officer, but lack of such a passing is immaterial.[5] The settlement between the parties was essentially an accord and satisfaction, and the taxpayer's relinquishment of its claim and its acceptance of the assets valued at little more than fifty per cent of the claim was certainly valuable consideration.[6] It would be unrealistic to say that the transfer of the insurance policies was gratuitous to the taxpayer. The tax court correctly concluded that the transfer of the policies was for a valuable consideration.[7]

■ The taxpayer's second point is that the $22,500.22 is not income within the meaning of the 16th Amendment. Briefly, the argument is that since the $22,500.22 was a recovery of part of the $488,010.60, it was not income. The taxpayer says that the receipt of the insurance funds was a diminution of loss and relies principally on Bowers v. Kerbaugh-Empire Co., 1926, 271 U.S. 170 at page 175, 46 S.Ct. 449 at page 451, 70 L.Ed. 886, wherein the Supreme Court did make the statement, that "the mere diminution of loss is not gain  *  *  *." But it has been specifically noted by the Supreme Court that this rule does not apply merely because the end result of a transaction or series of transactions extending over a period of years turns out to be a loss.

In Burnet v. Sanford & Brooks Co., 1931, 282 U.S. 359, 51 S.Ct. 150, 75 L. Ed. 383, the taxpayer in the years 1913 to 1916 deducted expenditures incurred in dredging the Delaware River for the United States Government and included in its gross income during those years payments made by the government under the contract. During those years, the taxpayer was losing money because its

---

4. "§ 22. Gross income
   *       *       *       *       *
   "(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter:
   "(1) Life insurance. Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income)." Int.Rev. Code of 1939, 26 U.S.C. § 22.

5. Ordinarily, it would be unnecessary to mention such an obvious point of contract law, but the taxpayer has strenuously argued that since no money or property of any kind was given to the officer, there was no valuable consideration. As a $448,010.60 debt is wiped out, one does not "see" anything passing in an empirical sense, but consideration is just as valid, whether A gives B $10 or agrees to release B from paying a $10 debt.

6. See Restatement, Contracts, § 417. Comment a reads, in part: "An accord is a contract (not merely a revocable offer nor a bargain invalid for lack of sufficient consideration or any other reason) between creditor and debtor for the settlement of the claim by some performance other than that which is due."
   Comment b reads: "The rules governing the validity and effect of accord and satisfaction are applicable as well where the pre-existing duty arises from a tort as where it is based on contract."

7. The tax court fixed the amount of consideration for the policy at $455.20, the agreed fair market value at the time of transfer. No issue is raised by the taxpayer regarding this amount.

expenditures exceeded the payments. The dredging work ceased in 1915. In 1920, the taxpayer, as a result of a suit for breach of warranty of the character of the material to be dredged, received $192,577.59, which represented the amount by which the dredging expenses had exceeded the payments, plus interest. The taxpayer argued that no part of the $192,577.59 was income because the money was only compensatory in nature and offset the losses suffered earlier. The Supreme Court held that that amount received in 1920 was without a doubt income within the meaning of the 16th Amendment, saying: "A taxpayer may be in receipt of net income in one year and not in another. The net result of the two years, if combined in a single taxable period, might still be a loss; but it has never been supposed that that fact would relieve him from a tax on the first, or that it affords any reason for postponing the assessment of the tax until the end of a lifetime, or for some other indefinite period, to ascertain more precisely whether the final outcome of the period, or of a given transaction, will be a gain or a loss." 282 U.S. at pages 364–365, 51 S.Ct. at page 152. We think that the rationale of that case is applicable to our facts. The taxpayer received in 1948 $22,500.22 over and above the total cost of acquiring and maintaining in effect the insurance policies, and this amount was income within the meaning of the 16th Amendment.

■ The taxpayer's next contention is that the $22,500.22 should be excluded from its 1948 gross income under the tax benefit rule, 26 U.S.C. § 22(b) (12) (1952 ed.).

The tax court decided that the receipt of the $22,500.22 was not attributable to a bad debt recovery, and so the tax benefit rule was not applicable. It was pointed out by the tax court that "* * * the tax benefit rule may be invoked only where there is a recovery which is directly attributable to a previous loss which produced no tax benefit. As stated in Merton E. Farr, 1948, 11 T.C. 552, affirmed sub nom., Sloane v. Commissioner, 6 Cir., 1951, 188 F.2d 254 [29 A.L.R.2d 580], 'one certain requirement for invoking it is that there be such an interrelationship between the event which constitutes the loss and the event which constitutes the recovery that they can be considered as parts of one and the same transaction.' The requirement that there be an 'integrated transaction' was made clear by the Supreme Court in Dobson v. Commissioner, supra [1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248], and followed in Allen v. Trust Co. of Georgia, 5 Cir., 1950, 180 F.2d 527, certiorari denied (1950), 340 U.S. 814 [71 S.Ct. 43, 95 L.Ed. 598], a case whose facts are similar to those here involved." 23 T.C. 404.

The tax court found that the 1931 transfer of the officer's assets and the extinguishment of his obligations to the taxpayer constituted a closed and completed transaction and that thereafter the assets were not interrelated with the officer's obligations which had been extinguished. As stated by the tax court, the transfer of the assets was the total termination of the debt, and the beginning of a new and separate transaction. The assets so acquired had their own independent basis for future gain or loss, which was the fair market value on the date of acquisition. See Allen v. Trust Co., 5 Cir., 180 F.2d 527, 528, certiorari denied, 1950, 340 U.S. 814, 71 S.Ct. 43, 95 L.Ed. 598.

The only difference between this case and the Allen case is that the assets in question there were shares of stock which later appreciated in value. We do not think that this difference is significant. The tax court correctly decided that the tax benefit rule was not applicable.

For the reasons stated, the decision of the tax court will be affirmed.