AMERICAN FINANCIAL CORPORATION (SUCCESSOR IN INTEREST TO NATIONAL GENERAL CORPORATION, THE SUCCESSOR IN INTEREST TO GREAT AMERICAN HOLDING COMPANY) AND SUBSIDIARIES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11559–77. Filed June 14, 1979.

*Bart A. Brown, Jr.,* for the petitioners.
*Karl D. Zufelt,* for the respondent.

OPINION

DAWSON, *Judge:* Respondent determined a deficiency in petitioner's consolidated Federal income tax for 1968 in the amount of $210,929. In its petition, however, petitioner alleged an overpayment for 1968 in the amount of $527,969. By an amendment to his answer the respondent alleged, as an offset to the overpayment claimed in the petition, that petitioner's net

operating loss carryover deduction in 1968 was overstated by $2,593,860. The issues raised in the deficiency notice and petition have been settled by the parties. Petitioner has conceded that the 1968 net operating loss carryover deduction was overstated by $182,408, but disputes the remainder which is attributable to exclusion of salvage and subrogation recoveries from its 1966 gross income. Thus, the only issue presented for our decision is whether Great American Holding Co. properly excluded $2,411,452 of salvage and subrogation recoveries from its 1966 gross income pursuant to section 111.[1]

All of the facts have been stipulated and are so found. The pertinent facts are summarized below.

Petitioner American Financial Corp. is a corporation with its principal place of business in Cincinnati, Ohio, at the time it filed its petition in this case. It is the successor in interest to National General Corp., which in turn was the successor in interest to Great American Holding Co. Petitioner is liable as a transferee for any deficiency and is entitled to any overpayment which may be determined in regard to the tax liability of the Great American Holding Co. for its 1968 taxable year.

Great American Holding Co. (hereinafter the Holding Co.) and its subsidiaries filed timely consolidated Federal income tax returns for the years 1967 and 1968 with the District Director of Internal Revenue, New York, N.Y.

One of the companies included in Holding Co.'s consolidated group was Great American Insurance Co. (hereinafter referred to as Insurance), a stock casualty insurance company. As a casualty insurance company, Insurance each year claimed a loss-incurred deduction pursuant to section 832(b)(5), which deduction was reported in the consolidated Federal income tax return of Holding Co.

The various insurance contracts that Insurance wrote during and prior to the years involved in this case provided that Insurance would have the right to any salvage and subrogation with respect to any claim that it paid. For Insurance, as well as for other casualty insurance companies, salvage consists of amounts recouped by the insurance company from the sale of damaged property to which the insurance company has taken

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.

title as a result of paying claims. Subrogation represents amounts that a casualty insurance company recovers, pursuant to its right of subrogation specified in its insurance contracts, from third parties who are ultimately found to be legally responsible for claims that the insurance company has paid.

At all times, Insurance reported its salvage and subrogation using the cash receipts and disbursements method of accounting. Under this method, Insurance did not recognize any income from salvage or subrogation at the time its salvage and subrogation rights arose. Instead, and in accordance with applicable State law and procedures prescribed by the National Association of Insurance Commissioners, it deferred recognition of income until actual receipt of salvage and subrogation proceeds. Thus, each year it reduced its deduction for losses incurred by the cash collections from salvage and subrogation during the year.[2]

In various years prior to 1960, Holding Co. claimed deductions for losses incurred by Insurance. Included within these deductions for each of such pre–1960 years were certain claims reported to and paid by Insurance during such year and specified claims reported but not paid which Insurance added to its loss reserves.

By reason of net operating losses subsequently incurred by Insurance and the expiration of net operating loss carryforwards relating to such pre–1960 net operating losses, the deduction for losses incurred taken by Holding Co. with respect to the paid and accrued claims of Insurance for pre–1960 years did not result in any tax benefit to Holding Co.

In 1966, Insurance received various salvage and subrogation proceeds with respect to its pre–1960 losses incurred deductions. Of the total salvage and subrogation payments received by Insurance in 1966, $2,411,452 was excluded from income by Holding Co. on its 1966 consolidated Federal income tax return on the ground that section 111 applied to such receipts.

---

[2]Sec. 832(b)(5) provides:

(5) LOSSES INCURRED.—The term "losses incurred" means losses incurred during the taxable year on insurance contracts, computed as follows:

(A) To losses paid during the taxable year, add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year.

(B) To the result so obtained, add all unpaid losses outstanding at the end of the taxable year and deduct unpaid losses outstanding at the end of the preceding taxable year.

The exclusion from income was accomplished by reducing the amount of the salvage and subrogation adjustment in the losses incurred deduction computation by $2,411,452. The remaining salvage and subrogation proceeds received by Insurance in 1966 were used to reduce the amount of Insurance's losses incurred deduction.

The exclusion of $2,411,452 of salvage and subrogation payments received in 1966 by Insurance resulted in a decrease of Holding Co.'s 1966 consolidated gross income by such an amount. Had Holding Co. not excluded this amount from its 1966 gross income, its net operating loss carryforward to 1968 would have been decreased by this same amount.

We must decide whether Holding Co. may exclude, pursuant to section 111, $2,411,452 of salvage and subrogation recoveries from its 1966 gross income.

Section 111 provides that gross income does not include income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent that such bad debt, prior tax, or delinquency amount did not result in a prior reduction of the taxpayer's tax.[3]

Although the statute only refers to the recovery of bad debts, prior taxes, and delinquency amounts, the regulations further provide that the "rule of exclusion so prescribed by statute applies equally with respect to all other losses, expenditures, and

---

[3]Sec. 111(a) and (b) provides:

(a) GENERAL RULE.—Gross income does not include income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount.

(b) DEFINITIONS.—For purposes of subsection (a)—

(1) BAD DEBT.—The term "bad debt" means a debt on account of the worthlessness or partial worthlessness of which a deduction was allowed for a prior taxable year.

(2) PRIOR TAX.—The term "prior tax" means a tax on account of which a deduction or credit was allowed for a prior taxable year.

(3) DELINQUENCY AMOUNT.—The term "delinquency amount" means an amount paid or accrued on account of which a deduction or credit was allowed for a prior taxable year and which is attributable to failure to file return with respect to a tax, or pay a tax, within the time required by the law under which the tax is imposed, or to failure to file return with respect to a tax or pay a tax.

(4) RECOVERY EXCLUSION.—The term "recovery exclusion", with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Secretary or his delegate of the deductions or credits allowed, on account of such bad debt, prior tax, or delinquency amount, which did not result in a reduction of the taxpayer's tax under this subtitle (not including the accumulated earnings tax imposed by section 531 or the tax on personal holding companies imposed by section 541) or corresponding provisions of prior income tax laws (other than subchapter E of chapter 2 of the Internal Revenue Code of 1939, relating to World War II excess profits tax), reduced by the amount excludable in previous taxable years with respect to such debt, tax or amount under this section.

accruals made the basis of deductions from gross income for prior taxable years." Sec. 1.111–1(a), Income Tax Regs.

In order to invoke the exclusionary rules of section 111, it is necessary "that there be such an interrelationship between the event which constitutes the loss and the event which constitutes the recovery that they can be considered as parts of one and the same transaction." *Farr v. Commissioner,* 11 T.C. 552, 567 (1948), affd. sub nom. *Sloane v. Commissioner,* 188 F.2d 254 (6th Cir. 1951). See also *Waynesboro Knitting Co. v. Commissioner,* 225 F.2d 477, 480 (3d Cir. 1955); *Allen v. Trust Co. of Georgia,* 180 F.2d 527, 528 (5th Cir. 1950); *Continental Ill. Nat. Bank & Trust Co. of Chicago v. Commissioner,* 69 T.C. 357 (1977). Thus, a *direct* relationship between the prior loss or deduction without tax benefit and the subsequent event which constitutes the recovery must be demonstrated. *Waynesboro Knitting Co. v. Commissioner, supra* at 480; *Birmingham Terminal Co. v. Commissioner,* 17 T.C. 1011, 1013 (1951); *Bear Mill Manufacturing Co. v. Commissioner,* 15 T.C. 703, 707–708 (1950); *Smith v. United States,* 248 F. Supp. 873 (D. Md. 1965).

Petitioner contends that a certain portion of the salvage and subrogation proceeds received in 1966 were recoveries of claims paid in pre–1960 years in which deductions for losses incurred were taken without tax benefit. Accordingly, it maintains that it is entitled to exclude the portion of salvage and subrogation proceeds that corresponds to the amount of losses incurred which were deducted without tax benefit. Respondent, on the other hand, asserts that since no direct relationship exists between claims paid by Insurance prior to 1960 and the subsequent realization of salvage and subrogation proceeds with respect to those claims, the benefits of section 111 are unavailable.

We agree with petitioner. Insurance was in the business of insuring casualty risks in property. As a loss occurred, Insurance paid the policyholder for the damage done to the property. In return, Insurance was entitled to proceed against any third party who caused the loss to recover the moneys paid to the policyholder. In certain situations, Insurance received the damaged property in return for its payment of the claim and attempted to sell the property as salvage.

In computing its gross income for a particular year, Insurance reduced its premium income by the losses incurred deduction required for insurance companies under section 832(b)(5). The

losses incurred deduction is essentially the amount of claims paid during a taxable year with reduction for salvage, subrogation, and reinsurance recovered in that year. Insurance employed the cash receipts and disbursements method of accounting for computing its salvage and subrogation recovered in a particular tax year.[4]

We think that a sufficiently direct relationship exists between the salvage and subrogation proceeds and the initial losses incurred deduction to justify an exclusion pursuant to section 111. As noted by the Supreme Court in *Phoenix Insurance Co. v. Erie Transportation Co.*, 117 U.S. 312, 321 (1886):

> From the very nature of the contract of insurance as a contract of indemnity, the insurer, when he has paid to the assured the amount of the indemnity agreed on between them, is entitled, by way of salvage, to the benefit of anything that may be received, either from the remnants of the goods, or from damages paid by third persons for the same loss.

The salvage and subrogation proceeds merely represent a recovery of the payment on the original claim. In our view they do not constitute a transaction divorced from the original claim payment.

Respondent relies on *Allen v. Trust Co. of Georgia*, 180 F.2d 527 (5th Cir. 1950), and *Waynesboro Knitting Co. v. Commissioner*, 225 F.2d 477 (3d Cir. 1955). These cases are inapposite.

In *Allen v. Trust Co. of Georgia, supra*, the taxpayer had received certain property from a third party in satisfaction of a debt owed the taxpayer. The taxpayer claimed a bad debt deduction equal to the excess of the debt over the fair market value of the property received in satisfaction. Subsequently, the taxpayer sold the property for gain and attempted to exclude that portion of the gain equal to the amount of bad debt that did not result in a tax benefit. In denying such an exclusion, the Fifth Circuit stated that "acquisition of [the] stock [property] was not the summation or integration of two specified values, but it was a total termination of debt and the beginning of a new and separate transaction." *Allen v. Trust Co. of Georgia, supra* at 528.

Similarly, in *Waynesboro Knitting*, a life insurance policy had

---

[4]Use of the cash method to determine when salvage and subrogation rights are to be included in the computation of the "losses incurred" deduction pursuant to sec. 832(b)(5) was approved in *Continental Insurance Co. v. Commissioner*, 200 Ct. Cl. 552, 474 F.2d 661 (1973).

been transferred in satisfaction of a debt owed the taxpayer who thereafter claimed a bad debt deduction which did not result in any tax benefit. When the policy was paid, the taxpayer excluded that part of the proceeds equal to the prior bad debt deduction taken without tax benefit. The Third Circuit, however, viewed such exclusion as improper since the debt transaction was closed and completed by the transfer, and the assets received by the taxpayer were not related to the debtor's extinguished obligations.

We think that *Birmingham Terminal Co. v. Commissioner*, 17 T.C. 1011 (1951), and *Smyth v. Sullivan*, 227 F.2d 12 (9th Cir. 1955), are more comparable to the instant case. In *Birmingham Terminal*, the taxpayer was a company engaged in the operation of railroad terminal facilities. It incurred certain retirement losses which the Interstate Commerce Commission (ICC) would not permit to be charged against the railroads using the facilities. Later, the ICC permitted the taxpayer to seek reimbursement for those losses from the railroads. The taxpayer sought to exclude the reimbursement from its gross income since it had received no tax benefit from the previously deducted retirement losses. We agreed with the taxpayer that the necessary relationship between the loss event and reimbursement event existed and accordingly permitted the exclusion.

In *Sullivan*, the taxpayer was executor of an estate for which liabilities were greater than the appraised value of its assets. The executor decided to hold a certain piece of property until an advantageous sale could be made. As a result, carrying charges were incurred over a number of years. When the property was finally sold, the executor excluded from the gain reported carrying charges previously deducted without tax benefit. The Ninth Circuit, in permitting the exclusion, viewed the administration of the property as a single integrated transaction.

In both cases, the courts viewed the subsequent reimbursement in *Birmingham* and the sale of estate property in *Sullivan* as transactions integrated with the prior losses and deductions claimed without tax benefit. The same is true here. The salvage and subrogation rights and proceeds arose out of the payment of the claim under the insurance contract. Moreover, the property involved in the subrogation suits and salvage sales was the very property on which Insurance initially paid a claim. In fact, we think the computation under section 832(b)(5) for "losses in-

curred," with its tying in of claim payments and salvage recoveries, also demonstrates the close relationship between claim payments and salvage proceeds. We note that section 111 would apply if a policyholder had not purchased insurance but claimed a casualty loss without tax benefit and subsequently sued the wrongdoer to recover damages. We can perceive of no reason why Insurance should not be treated in the same manner as the owner of the property, who, having incurred the loss, recovers part of that loss via sale of the damaged property or through a subrogation suit. Finally, we reject respondent's suggestion that a valid recovery can only occur if the insurance company discovers that it incorrectly paid a claim and recovers that payment solely from its policyholder.

Respondent also argues that the transfer of the salvage and subrogation rights to Insurance in pre–1960 years and the subsequent receipt of the proceeds are separate transactions for purposes of section 111. He theorizes that upon receipt of the rights the taxpayer must value the rights at zero and in the subsequent recoveries realize gain from the excess of the proceeds over this zero basis. Respondent's theory ignores the appropriate rules for a cash method taxpayer. Upon receipt of the salvage and subrogation rights, any recognition of value is deferred until actually reduced to cash proceeds. No taxable event occurs with respect to the salvage and subrogation rights at the time they are received. Accordingly, respondent's analogy to the *Waynesboro* and *Allen* cases is incorrect. In those cases, the value of the assets received determined the extent of the bad debt deduction taken by the taxpayers. Here, by contrast, Holding Co.'s (and Insurance's) losses incurred deduction was not determined by or fixed by any value the salvage and subrogation rights might have had. Value was fixed at the time they were reduced to cash. At that time, absent applicability of section 111, they were includable in gross income by means of the adjustment to the losses incurred deduction. Section 111 does apply, however, since we have concluded that the necessary relationship exists between the initial losses incurred and the subsequent recoveries.

Finally, respondent contends that the salvage and subrogation recoveries are not items of income but are mere offsets to the required computations for stock casualty companies of their losses incurred deduction, a deduction from premium income in

determining gross income. Accordingly, respondent maintains that section 111 is inapplicable since only items of income can be excluded under the provision.[5] Petitioner counters by arguing that the salvage and subrogation recoveries are items of income and not mere offsets to the deduction for losses incurred.

Again we agree with petitioner. Gross income for stock casualty companies is defined, inter alia, as the sum of the combined gross amount earned during the taxable year from investment income and underwriting income. Sec. 832(b)(1). Underwriting income is defined as premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred. Sec. 832(b)(3). Losses incurred, in the context of this petitioner, means losses paid during the taxable year less salvage and subrogation reduced to cash during the year. Sec. 832(b)(5). To the extent that salvage and subrogation recoveries are increased, the deduction for losses paid will be reduced, thereby increasing the gross income figure for the insurance company. Respondent's position that salvage is not an income item but only an offset to the losses incurred deduction is not supported statutorily and potentially would lead to absurd and unintended results. For example, if we assume that in a given year that salvage and subrogation proceeds for a cash basis taxpayer exceeded the amount of claims paid, then under respondent's view this excess would not be reported in the gross income of the insurance company since salvage could only "offset" the losses paid during the year. Section 832(b)(5) does not provide that salvage can be used only as an offset, and we think it is unlikely that the respondent would, under different circumstances, so argue. Technical niceties aside, salvage and subrogation proceeds are items of gross income.

We hold that petitioner is entitled to exclude from its gross income that portion of its 1966 salvage and subrogation recoveries which are related to its pre–1960 losses incurred which were deducted without tax benefit.

---

[5]Respondent cites *Home Mutual Insurance Co. v. Commissioner,* 70 T.C. 944 (1978), in support of his proposition that salvage and subrogation recoveries are not items of gross income. We think respondent's reliance on this case is misplaced. The case did not involve salvage and subrogation recoveries but concerned adjustments to the unpaid loss reserve accounts used in computing the losses incurred deduction in sec. 832(b)(5). Moreover, the Court did not find the tax benefit rule applicable in the case nor did it base its opinion on its inapplicability. Accordingly, we do not think that the dicta expressed in the opinion as to whether overestimated unpaid loss accounts result in an overestimation of income have application here.

To give effect to concessions made by the parties and our conclusion on the disputed issue,

*Decision will be entered under Rule 155.*