**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 6 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARTIN M. BURKE,

       Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

       Respondent-Appellee.

No. 97-9022
Appeal from U.S. Tax Court
(T. C. No. 15957-92)

- - - - - - - - - - - - - - -

DATHA D. BURKE,

       Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

       Respondent-Appellee.

No. 97-9023
Appeal from U.S. Tax Court
(T. C. No. 14139-89)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, **BRISCOE**, and **LUCERO**, Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). These cases are therefore ordered submitted without oral argument.

Petitioners Datha D. Burke and Martin M. Burke, husband and wife, appeal from the Tax Court's judgment finding them liable for federal income tax deficiencies for the year 1982. On appeal, the sole issue is whether Mr. and Mrs. Burke are entitled to relief from the discharge of indebtedness income pursuant to Bowers v. Kerbaugh-Empire Co., 271 U.S. 170 (1926). We have jurisdiction to consider this appeal. See 26 U.S.C. § 7482(a). For the reasons that follow, we affirm the Tax Court and conclude Mr. and Mrs. Burke are not entitled to relief from discharge of indebtedness income.

I.

Mr. and Mrs. Burke each owned fifty percent of the outstanding stock of Burke Energy Corporation. Burke Energy was the parent company of a consolidated group of companies engaged in the business of wholesaling and retailing natural gas liquids.

Mr. Burke owed Burke Energy approximately $853,000.[1] Mr. and Mrs. Burke sought to remove the receivable from the books of Burke Energy. They engaged in two transactions to do so. First, Mrs. Burke transferred her interests in two parcels of real property to Mr. Burke in exchange for shares of stock in Maize State Bank and University State Bank. Mr. Burke then transferred the real estate to Burke Energy in satisfaction of the debt.

The specifics of the two transactions are as follows. On June 20, 1982, Mr. and Mrs. Burke entered into two contracts to exchange the real property for the bank stock. One contract stated Mrs. Burke sold the 707 N. Main property for $250,000, payable by

---

[1] Mr. and Mrs. Burke assert the following facts based upon Mr. Burke's testimony before the Tax Court. In 1979 or 1980, Burke Energy acquired a controlling interest in two banks, Maize State Bank and University State Bank. Burke Energy paid a total of $853,000 for the controlling interests and listed the bank stock as an asset. Shortly after Burke Energy acquired the stock, banking regulators for the State of Kansas advised Burke Energy and Mr. and Mrs. Burke that Kansas law restricted a corporation's ownership of bank stock. The regulators directed Burke Energy to divest itself of the stock. Burke Energy transferred the stock to Mr. Burke and entered in its books a receivable from Mr. Burke in the amount Burke Energy paid to acquire the controlling interest in the banks. Also, during the same time, Mr. and Mrs. Burke responded to the regulator's mandatory capital calls.

The Tax Court rejected these facts concluding Mr. Burke's testimony was not credible, as it was general, conclusory, and mostly unsupported by other evidence in the record. "[F]air debates about fact-bound matters of characterization are resolved on appeal in favor of the solution the trier of fact reaches." LDL Research & Dev. II, Ltd. v. Commissioner, 124 F.3d 1338, 1349 (10th Cir. 1997) (quotation omitted). The Tax Court's decision to discredit the testimony of Mr. Burke was not clearly erroneous. See id. at 1344. No evidence, other than Mr. Burke's testimony, showed that Mr. Burke purchased the stock from Burke Energy. Rather, other evidence indicates Burke Energy financed part of Mr. Burke's purchase of the stock.

Mr. Burke's assumption of the $5,294 mortgage and transfer of 29,341 shares of common stock in Maize State Bank. The second contract, for the A and Walnut property, stated Mr. Burke would assume a $150,638 mortgage and transfer 20,000 shares of Maize State Bank common stock and 23,534 shares of University State Bank common stock in exchange for the property, which they valued at $675,000. The stocks were transferred at Mr. Burke's acquisition price.

At the time of the transaction, both Mr. and Mrs. Burke were co-obligors on the mortgages. Her basis in the 707 N. Main property was $8,850, and her basis in the A and Walnut property was $72,426. Although the 707 N. Main property was worth $250,000, the A and Walnut property actually was worth only $262,000. The shares of Maize State Bank common stock and University State Bank common stock were worth $8.34 and $1.89 respectively.

Despite the contracts, Mr. Burke did not transfer any of the stock to Mrs. Burke. It had been pledged as collateral for various obligations. Even after the transfer of the real estate, Mrs. Burke continued to remain an obligor on the mortgages.

After Mrs. Burke transferred the real estate to Mr. Burke, he in turn transferred it to Burke Energy to satisfy his indebtedness to the corporation. Specifically, on June 29, 1982, nine days after the contracts between Mr. and Mrs. Burke had been formalized, Mr. Burke and Burke Energy entered into two contracts, one for each parcel of realty. The contract regarding the 707 N. Main property stated Burke Energy was purchasing

the property for $250,000 by assuming a $5,294 mortgage on the property and by canceling $244,706 of Mr. Burke's outstanding debt. The contract regarding the A and Walnut property set forth a $675,000 purchase price with Burke Energy assuming a $150,638 mortgage and canceling the remaining $524,362 portion of Mr. Burke's indebtedness. Even after the property had been deeded to Burke Energy, Mr. and Mrs. Burke remained liable on the mortgages.

On their 1982 joint income tax return, Mr. and Mrs. Burke reported a short term capital gain of $16,690 from the transfer of the properties by Mr. Burke to Burke Energy. In computing the gain, Mr. and Mrs. Burke used a selling price of $853,086 and a basis of $836,396.[2] They did not report any gain or loss on the transaction between themselves. Nor did they report any income from Burke Energy's cancellation of Mr. Burke's indebtedness in an amount greater than the value of the properties he transferred.

In 1984, Mr. and Mrs. Burke claimed a long term capital loss of $1,059,900 with respect to the University State Bank common stock. The loss was carried forward. The record does not indicate whether the Burkes have ever claimed a loss with respect to the Maize State Bank common stock.

---

[2]     The basis amount was not Mrs. Burke's basis in the real property. Presumably, it was the value of the consideration Mr. Burke provided to Mrs. Burke in exchange for the real property.

Upon audit, the Commissioner determined the A and Walnut property was worth only $262,000, not $675,000. The Commissioner also determined Mr. and Mrs. Burke received a dividend of $413,000 from Burke Energy and a capital gain of $430,724 from Burke Energy's discharge of Mr. Burke's indebtedness. Accordingly, the Commissioner issued separate notices of deficiency to Mr. and Mrs. Burke.

Mr. and Mrs. Burke filed separate petitions for review in the Tax Court, arguing they were entitled to relief from the deficiency assessments under the judicially-created exception to discharge of indebtedness income set forth in Kerbaugh-Empire, 271 U.S. 170. The Tax Court consolidated their cases. The Tax Court agreed with the Commissioner that Mr. and Mrs. Burke received $431,000 in capital gains and $413,000 in dividend income from cancellation of the indebtedness in 1982. The court stated it was unpersuaded that Kerbaugh-Empire created an exception to the discharge of indebtedness income under the circumstances of this case. Rather, the Tax Court found Mr. and Mrs. Burke had overvalued the A and Walnut property when they transferred it to Burke Energy and were seeking to mitigate the tax burden flowing from overvaluation. Mr. and Mrs. Burke appealed.

## II.

"We review the Tax Court's factual findings under the clearly erroneous standard and purely legal questions de novo." LDL Research & Dev. II, Ltd. v. Commissioner, 124 F.3d 1338, 1342 (10th Cir. 1997). Whether several acts are separate transactions or

"are integrated steps in a single transaction is a question of fact." Estate of Kluener v. Commissioner, 154 F.3d 630, 634 (6th Cir. 1998). Whether Mr. and Mrs. Burke have income from the discharge of indebtedness is a question of law. See Vukasovich, Inc. v. Commissioner, 790 F.2d 1409, 1411 (9th Cir. 1986).

III.

The issue before this court is whether Mr. and Mrs. Burke have income from the discharge of indebtedness. Mr. and Mrs. Burke agree that taxpayers generally realize income upon the discharge of indebtedness. See I.R.C. § 61(a)(12). They further agree that they do not qualify for any statutory exceptions to discharge of indebtedness income. See I.R.C. § 108(a)(1). Rather, Mr. and Mrs. Burke continue to argue Kerbaugh-Empire, 271 U.S. 170, provides them with a judicially-created exception to discharge of indebtedness income.[3] They believe all transactions should be collapsed into a single transaction and there should be no recognized income from the discharge of indebtedness because they ultimately realized a loss on the bank stock. Mr. and Mrs. Burke contend Mr. Burke incurred debt to purchase the bank stocks, but the investment proved to be a loss when viewed along with the income from the discharge of indebtedness. They maintain that, under the circumstances of an overall loss, the substance of the transaction

---

[3]     Mr. and Mrs. Burke do not contest the Tax Court's computations or its determination of the fair market value of the A and Walnut property.

should govern over its form. They concede, however, that if form governs, the Commissioner prevails.

Before considering the tax consequences of the overall transaction, we must first consider the appropriate characterization of the transfer of the real property from Mrs. Burke to Mr. Burke. Mr. and Mrs. Burke argue the transfer of real estate from Mrs. Burke to Mr. Burke was a gift because she did not receive any consideration for the transfer of the property since Mr. Burke was already liable for the mortgage and the stock could not be transferred. They thus maintain the transaction should be viewed as a contribution to capital of the real estate by Mrs. Burke coupled with discharge of indebtedness income to Mr. Burke, which need not be reported as income due to the overall loss.

Mr. and Mrs. Burke, however, did not describe or set up the transfer of the real property from Mrs. Burke to Mr. Burke as a gift. They specifically referred to each transfer as a sale. See generally Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974) ("[W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not . . . ."); McCoy Enters., Inc. v. Commissioner, 58 F.3d 557, 561 (10th Cir. 1995) ("It is well settled that taxpayers are generally held to the consequences of their own characterizations of transactions."). Also, in the exhibits attached to their Tax Court petitions, they explicitly stated the two steps should not be

ignored and the contracts should be followed as written.  See No. 97-9022 R. Doc. 1, Ex. J at 10; No. 97-9023 R. Doc. 1, Ex. K at 10.

The Commissioner argues it is irrelevant whether the property was transferred as part of a bona fide sale or as a gift, because Mrs. Burke's basis would be the appropriate basis for computing capital gain under either scenario.  If Mrs. Burke *gifted* the real property to Mr. Burke, he would have acquired her basis in the property.  See I.R.C. §§ 1015(a), (e); 1041(b).  Under such a scenario, any income would have been computed based on the acquired basis at the time Mr. Burke transferred the property to Burke Energy.  If Mrs. Burke *sold* Mr. Burke the property, the transfers would be a taxable disposition under I.R.C. § 1001(a), requiring a gain to be reported.  We agree with the Commissioner that Mrs. Burke's basis must be used for computing gain, regardless of how the transfers between Mr. and Mrs. Burke are characterized.

Having determined characterization makes no difference for tax purposes, we now decide whether Kerbaugh-Empire provides an exception for the discharge of indebtedness income.  We note initially that Kerbaugh-Empire has been implicitly repudiated by the Supreme Court in subsequent decisions.  See Preslar v. Commissioner, 167 F.3d 1323, 1332 (10th Cir. 1999) (citing Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-32 & n.11 (1955); United States v. Kirby Lumber Co., 284 U.S. 1, 2 (1931)).  In any event, Kerbaugh-Empire is of no help to the Burkes here.  Kerbaugh-Empire involved a corporation that (1) borrowed German marks from 1911 to 1913 to

finance construction contracts being performed by a subsidiary, (2) lost money on the underlying transaction from 1913 to 1918, and (3) repaid the loan in 1921 with marks that had depreciated in value. See Kerbaugh-Empire, 271 U.S. at 172-73. The Supreme Court held the difference between the purchase price of the marks and the repayment amount was not income in 1921, the tax year at issue; rather, it was a reduction of the loss on the underlying transaction and was therefore not taxable. See id. at 175. In reaching its decision, the Court gave controlling weight to the substance rather than the form of the transaction. See id. at 174.

Like the taxpayer in Kerbaugh-Empire, Mr. and Mrs. Burke also lost money on the overall transaction. The Commissioner, however, contends they must be able to show the loss took place before the end of the tax year in question, 1982, in order for Kerbaugh-Empire to apply. We agree.

In Kerbaugh-Empire, the Supreme Court made its decision based on a tax year when all income and losses had been finally determined. Here, there was no final outcome in 1982, the tax year at issue. There is no indication the bank stock became worthless or declined in value in 1982. The Tax Court found the Maize State Bank common stock had a basis of $5.92 per share and a value in June of 1982 of $8.34 per share. The Tax Court found the University State Bank common stock had a fair market value of $1.89 per share in June of 1982. Mr. and Mrs. Burke do not dispute these findings with citation to evidence to the contrary. Indeed, at the time they filed their Tax

-10-

Court petitions, Mr. and Mrs. Burke indicated the stocks provided valuable consideration to Mrs. Burke in exchange for the property. See No. 97-9022 R. Doc. 1, Ex. J at 10; No. 97-9023 R. Doc. 1, Ex. K at 10. Also, on their 1982 joint tax return, Mr. and Mrs. Burke stated Mr. Burke's basis in the real property following the stock transaction with Burke Energy was $836,396. See No. 97-9022, Ex. 1-A, Schedule D. Assuming the mortgage accounted for $156,032 of this $836,396 basis, $680,364 of the basis related to the stock. Thus, there is no evidence of a loss with respect to the stock in 1982. Further, Mr. and Mrs. Burke claimed a loss on the University State Bank common stock on their 1984 tax return. They presented no evidence that the Maize State Bank common stock ever resulted in a loss.

To except Mr. and Mrs. Burke from discharge of indebtedness income in 1982 would allow them to take a deduction for the same loss in both 1982 and 1984. It is not reasonable to expect the Commissioner to recalculate taxes for prior years every year there is an accounting event which may cause a possible impact. See Healy v. Commissioner, 345 U.S. 278, 284-85 (1953) ("It would be disruptive of an orderly collection of the revenue to rule that the accounting must be done over again to reflect events occurring after the year for which the accounting is made, and would violate the spirit of the annual accounting system. This basic principle cannot be changed simply because it is of advantage to the taxpayer . . . in a particular case that a different rule be followed."); see also Waynesboro Knitting Co. v. Commissioner, 225 F.2d 477, 479-80

(3d Cir. 1955) (recognizing that rule of <u>Kerbaugh-Empire</u> that diminution of loss is not gain does not apply merely because end result of transactions extending over period of years turns out to be loss; relying on <u>Burnet v. Sanford & Brooks Co.</u>, 282 U.S. 359, 364-65 (1931), which recognizes annual accounting for tax purposes).  Thus, <u>Kerbaugh-Empire</u> does not extend to the factual circumstances present here.

We conclude Mr. and Mrs. Burke had taxable income from the discharge of indebtedness in 1982.  Accordingly, we affirm the Tax Court's ruling that Mr. and Mrs. Burke are liable for the tax deficiency.

The judgment of the United States Tax Court is AFFIRMED.


Entered for the Court


Mary Beck Briscoe
Circuit Judge

-12-