The **CONTINENTAL INSURANCE COMPANY**

v.

The **UNITED STATES.**

No. 459–69.

United States Court of Claims.

Feb. 16, 1973.

Walter J. Rockler, Washington, D. C., attorney of record, for plaintiff; Richard L. Hubbard, Washington, D. C., of counsel.

Roger A. Schwarz, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant; Philip R. Miller, and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SKELTON, Judge:

In this case plaintiff seeks to recover income taxes and interest, which it asserts were erroneously and illegally assessed and collected, in the amounts of $2,413.71 for the calendar year 1954 and $475,003.80 for the calendar year 1955. The case is before the court on plaintiff's motion for summary judgment and has been briefed and argued orally by both sides. The parties are in basic agreement as to the facts essential to our decision of this motion and these facts are set out below.

Plaintiff, The Continental Insurance Company, is a corporation organized un-

der the laws of the State of New York. It is, and at all relevant times has been, engaged in business as a stock fire and casualty insurance company, transacting its business in each of the states of the United States and in the District of Columbia. Consequently, plaintiff is an insurance company subject to the tax imposed by Section 831 of the Internal Revenue Code of 1954 and computes its taxable income under Section 832 of the Code.

Plaintiff duly filed its federal income tax returns for the calendar years 1954, 1955, 1956, and 1957 and paid the taxes shown to be due thereon. The District Director of Internal Revenue later assessed deficiencies in tax and interest thereon against it for the years 1954 and 1955. Plaintiff paid these assessed tax deficiencies and interest in full and then filed claims for refund with respect to the portions of the deficiencies for 1954 and 1955 which resulted from the adjustment of its deductions for losses paid for the years 1955, 1956, and 1957.

In computing its federal income tax for the years 1954 through 1957, plaintiff included as income the amount of its earned premiums less losses paid and unpaid losses. In making such computation, it reduced losses paid by salvage which had been reduced to cash or its equivalent during the year. It did not, however, reduce losses paid by estimates of salvage that might be recovered on such losses in future years. Salvage consists basically of (1) amounts recouped by the insurer through the sale of damaged property to which it has taken title, and (2) amounts that the insurer recovers from third parties who are found to be ultimately responsible for the damage sustained by the insured (subrogation). During the years at issue the rules of some states barred the use of estimates of salvage, and barred salvage adjustments for property which had not been reduced to cash or cash equivalents.

The District Director determined that plaintiff's losses paid for the years 1955, 1956, and 1957 should be reduced by salvage recoverable, i. e., by an estimate of the salvage on losses paid in each year that might be recovered in subsequent years, as well as by salvage actually reduced to cash or cash equivalents during each year. He made this adjustment with regard to all plaintiff's business, and not merely with regard to that portion of the business done in states which did not expressly bar such an adjustment. The result of this determination was to increase plaintiff's taxable income for 1955 and 1956 and to decrease its taxable income for 1957. The effect of these income adjustments for the year 1954 was to decrease plaintiff's loss carryback from 1956 and consequently, to increase its income taxes for 1954. The effect for 1955 was to increase plaintiff's taxable income for that year and to increase its loss carryback from 1957, though in a much lesser amount, the net effect of which was to increase its income taxes for 1955. The plaintiff's claims for refund were denied and this suit followed.

The statutory context of this case can be briefly summarized. Section 831 of the Internal Revenue Code of 1954 imposes corporate taxes (computed as provided in Section 11) on insurance companies such as plaintiff. Section 832 of the Code[1] describes how the "taxable in-

1. 26 U.S.C. § 832 (1958) reads, in pertinent part, as follows:

"§ 832. Insurance company taxable income.

"(a) Definition of taxable income.

"In the case of an insurance company subject to the tax imposed by section 831, the term 'taxable income' means the gross income as defined in subsection (b)(1) less the deductions allowed by subsection (c).

"(b) Definitions.

"In the case of an insurance company subject to the tax imposed by section 831—

"(1) Gross income.

"The terms 'gross income' means the sum of—

"(A) the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection,

come" of such insurance companies is to be determined. "Taxable income" is defined as "gross income" less certain specified deductions. The two major components of "gross income" are "underwriting income" and "investment income" which, according to Section 832(b)(1)(A), are to be "computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners."[2] The term "underwriting income" means the premiums earned on insurance contracts during the taxable year less "losses incurred" on such contracts and "expenses incurred." "Losses incurred" during the taxable year on insurance contracts consist of two elements, losses paid and unpaid losses. Section 832(b)(5) provides:

(5) LOSSES INCURRED.—The term "losses incurred" means losses incurred during the taxable year on insurance contracts, computed as follows:

(A) To losses paid during the taxable year, add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year.

(B) To the result so obtained, add all unpaid losses outstanding at the end of the taxable year and deduct unpaid losses outstanding at the end of the preceding taxable year.

Thus, losses paid must be adjusted for the change during the year in salvage and reinsurance recoverable. Any increase in salvage and reinsurance recoverable during the year decreases the amount of losses paid, and any decrease in salvage and reinsurance recoverable during the year increases losses paid.

■ The statute, however, does not define the term "salvage * * * recoverable" or even describe what is meant by salvage. It is therefore necessary to look beyond the statute to the applicable regulations and to insurance law. As pointed out earlier, salvage includes all tangible property and subrogation claims acquired by an insurance company after indemnifying its insured under contracts of insurance. In Phoenix Insurance Co. v. Erie Transportation Co., 117 U.S. 312, 321, 6 S.Ct. 750, 753, 29 L.Ed. 873 (1886), a case involving the subrogation rights of an insurer, the

---

computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners.

\* \* \* \* \*

"(3) Underwriting income.

"The term 'underwriting income' means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred.

"(4) Premiums earned.

"The term 'premiums earned on insurance contracts during the taxable year' means an amount computed as follows:

"(A) From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance.

"(B) To the result so obtained, add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on

outstanding business at the end of the taxable year.

\* \* \* \* \*

"(5) Losses incurred.

"The term 'losses incurred' means losses incurred during the taxable year on insurance contracts, computed as follows:

"(A) To losses paid during the taxable year, add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year.

"(B) To the result so obtained, add all unpaid losses outstanding at the end of the taxable year and deduct unpaid losses outstanding at the end of the preceding taxable year."

2. The National Convention of Insurance Commissioners is now known as the National Association of Insurance Commissioners.

Supreme Court defined salvage as follows:

> From the very nature of the contract of insurance as a contract of indemnity, the insurer, when he has paid to the assured the amount of the indemnity agreed on between them, is entitled, by way of salvage, to the benefit of anything that may be received, either from the remnants of the goods, or from damages paid by third persons for the same loss.[3]

Section 1.832–1(c) [4] of the Treasury Regulations, 26 C.F.R. 1.832–1(c), reads as follows:

> (c) That part of the deduction for "losses incurred" which represents an adjustment to losses paid for salvage and reinsurance recoverable shall, except as hereinafter provided, include all salvage in course of liquidation, and all reinsurance in process of collection not otherwise taken into account as a reduction of losses paid, outstanding at the end of the taxable year. Salvage in course of liquidation includes all property (other than cash), real or personal, tangible or intangible, except that which may not be included by reason of express statutory provisions (or rules and regulations of an insurance department) of any State or Territory or the District of Columbia in which the company transacts business. Such salvage in course of liquidation shall be taken into account to the extent of the value thereof at the end of the taxable year as determined from a fair and reasonable estimate based upon either the facts in each case or the company's experience with similar cases. Cash received during the taxable year with respect to items of salvage or reinsurance shall be taken into account in computing losses paid during such taxable year.

With respect to salvage, the above-quoted paragraph of the regulations has four components, one stated in each sentence. First, salvage recoverable includes all salvage in course of liquidation. Second, salvage in course of liquidation includes all property (other than cash) except that which is excluded by an express statute, rule, or regulation of any state in which the insurer transacts business. Third, salvage in course of liquidation must be taken into account upon a fair and reasonable estimate based upon the facts in each case or experience in similar cases. Fourth, cash received during the year with respect to salvage is taken into account as a reduction in computing losses paid during the year, before this item is adjusted by estimates of future salvage recoveries.

The parties have stipulated that:

> 1. During each of the years 1953–1957, the insurance departments of some states in which plaintiff did business during such years had express rules or regulations (within the meaning of Treasury Regulations Section 1.832–1(c)) prohibiting plaintiff from reducing losses paid by, or otherwise, taking credit for, (a) any property, tangible or intangible, in the form of salvage or subrogation, before such property is reduced to cash or cash equivalents, and (b) estimates of the value of any property, tangible or intangible, in the form of salvage or subrogation, before such property is reduced to cash or cash equivalents.

The issue presented is whether, under Section 832(b)(5)(A) of the Code, plaintiff is required to adjust losses paid by estimates of future salvage recoveries on such losses, in light of (a) Section 1.832–1(c) of the Treasury Regulations which excludes from the salvage recoverable adjustment to losses paid,

---

3. This definition of salvage was quoted with approval by the Board of Tax Appeals in George S. Van Schaick, 32 B.T.A. 736, 741 (1935), aff'd, 83 F.2d 940 (2d Cir. 1936), a case which arose under Section 204 of the Revenue Act of 1928, a predecessor to Sections 831, 832 of the Internal Revenue Code of 1954.

4. Applicable to the years in issue. See Section 1.832–3 of the Treasury Regulations.

any salvage that may not be included under rules or regulations of the insurance department of any state in which plaintiff did business, and (b) the stipulated fact that during the years in issue there were such state rules and regulations prohibiting the recognition of salvage other than in the form of property consisting of cash or cash equivalents. It is a case of first impression.

Plaintiff's position in this case is rather simple to state. Plaintiff contends that under the above-quoted Treasury Regulations it was not required to reduce losses paid by any salvage for which it was not permitted to take credit under the rules or regulations of the insurance department of any state in which it did business. The parties have stipulated that during the years in issue the insurance department of some states in which plaintiff did business had rules or regulations prohibiting it from taking credit for salvage until reduced to cash or cash equivalents. Therefore, plaintiff submits that it should not be required for federal income tax purposes to reduce its losses paid by estimates of salvage recoverable in the future, i. e., by salvage prior to its reduction to cash or its equivalent. Plaintiff says that it properly subtracted salvage received in cash or cash equivalents in computing losses paid, which was all it was required to do by the Regulations with respect to salvage.

Defendant has, throughout the course of this litigation, maintained four different positions as to why and how plaintiff was required to reduce losses paid by estimates of future salvage recoveries. Its first two positions have been abandoned and will not be discussed.[5] The other two, which are presently being urged by the defendant, are as follows: First, defendant asserts that Regulation Section 1.832–1(c) requires that estimated amounts of sal-

vage recoverable are excluded for federal tax purposes only to the extent that they relate to business conducted by plaintiff within states which prohibit the recognition of salvage before it is reduced to cash or the equivalent of cash. In other words, defendant interprets the Regulations as requiring a state-by-state approach. Second, defendant contends that a state law, or a rule or regulation of an insurance department, of any state is a proper basis for reducing the Section 832(b)(5)(A) salvage recoverable adjustment if the state law, rule, or regulation excludes specified items of property from being taken into account as salvage in course of liquidation but not if it forbids the making of any adjustment whatsoever for all salvage in course of liquidation, the value of which must be determined by estimation.

■ At the outset, it must be recognized that the casualty insurance business is a thoroughly regulated industry. The terminology and concepts of the Internal Revenue Code and Regulation provisions dealing with casualty insurance are based directly on industry usage developed in response to state regulation. New Hampshire Fire Insurance Co., 2 T.C. 708 (1943), aff'd, 146 F.2d 697 (1st Cir. 1945). One important aspect of state regulation is the requirement that insurance companies file annual financial reports or statements with the states in which they do business. Over the years, the form of these annual statements has been standardized by the National Association of Insurance Commissioners. This prescribed form is known as the "annual Statement" or the "Convention Form." It is clear that an insurance company sets forth in its Annual Statement, filed with each state, financial data regarding all of its business, wherever conducted, and that the rules of a state insurance department relating to items reflected in the Annual

---

5. Defendant originally argued that no state in which plaintiff did business had any statute, rule or regulation barring salvage estimates. (It has since stipulated to the contrary.) Next, defendant contended

that state rules and regulations regarding salvage were irrelevant and that a federal standard as to the meaning of salvage recoverable outstanding should be applied.

Statement apply equally to all of the company's business, wherever conducted. None of the assets or liabilities, or items of income or deduction, are allocated on a state-by-state basis. These fundamental facts were understood to be the case and taken for granted in numerous judicial decisions considering to what extent the Annual Statement should be followed for federal income tax purposes. See, e. g., Commissioner v. General Reinsurance Corp., 190 F.2d 148 (2d Cir. 1951); Bituminous Casualty Corp., 57 T.C. 58 (1971); New Hampshire Fire Insurance Co., 2 T.C. 708 (1943), aff'd 146 F.2d 697 (1st Cir. 1945). This court has proceeded on the same basis in other cases involving casualty insurance company taxation. See, e. g., Title Guarantee Co. v. United States, 432 F.2d 1363, 193 Ct.Cl. 1 (1970); Colonial Surety Co. v. United States, 178 F.Supp. 600, 147 Ct. Cl. 643 (1959). Cf. Continental Assurance Co. v. United States, 8 F.Supp. 474, 79 Ct.Cl. 756 (1934); Massachusetts Mutual Life Insurance Co. v. United States, 59 F.2d 116, 75 Ct.Cl. 117 (1932), aff'd, 288 U.S. 269, 53 S.Ct. 337, 77 L.Ed. 739 (1933); Minnesota Mutual Life Insurance Co. v. United States, 66 Ct.Cl. 481 (1928), cert. denied, 279 U.S. 856, 49 S.Ct. 352, 73 L.Ed. 998 (1929), all dealing with life insurance companies.

■ There is a very sound reason for the total approach of the Annual Statement. State insurance departments are concerned with assuring that a company's financial position is sound enough to protect policyholders in their respective states. In determining the financial strength of a large, multi-state insurer such as plaintiff, it would be illogical for the insurance department of a particular state to scrutinize only that part of plaintiff's business carried on within that state. Plaintiff's business in that one state might be prospering, while elsewhere it might be hopelessly insolvent. Thus a state insurance department must examine all of plaintiff's assets and liabilities, and all of its income and expenses and apply its rules to plaintiff's total business if policyholders within that state are to be adequately protected. The purpose of the state rule herein involved, prohibiting the use of salvage estimates to increase assets or reduce losses, is obviously to prevent the use of inaccurate estimates[6] which might overstate financial strength and to allow only those items of salvage which are, or will soon be, in the form of cash or otherwise available for the payment of claims. No state limits the application of its salvage rule (or any insurance rule) to business done within that state, for the reasons mentioned above. Consequently, Section 1.832–1(c) of the Treasury Regulations must be construed to mean that where the exception based on the salvage rule of any state comes into play, the exception applies to salvage property of the insurer wherever located.[7]

6. Estimates of future salvage recoveries are by their very nature extremely speculative. In the case of subrogation claims the amount of recovery will often depend on something as uncertain as a jury verdict.

7. See Washington Title Insurance Co. v. United States, 135 F.Supp. 426, 133 Ct.Cl. 164 (1955) for a good illustration of how state insurance rules are applied and how such application has been accepted for federal tax purposes. Three insurance companies, operating as a pool and writing title insurance in Virginia, Maryland and the District of Columbia, attempted to establish unearned premium reserves on a state-by-state basis. Upon examination, state insurance officials required them to apply the strictest state rule on reserves (Virginia's) to all their business. The companies complied and proceeded to use the strictest state rule in computing unearned premiums for federal income tax purposes. This court concluded that the companies were entitled to deduct the reserves required to be set aside by the strictest state for federal income tax purposes. The Internal Revenue Service cited this case with approval in Rev.Rul. 57–48, 1957–1 Cum. Bull. 212.

This interpretation is substantiated by an examination of the history of this Regulation. Though essentially identical provisions to Sections 831, 832 were first adopted by Congress in 1921, the Treasury promulgated no regulations with respect to salvage under this antecedent to Section 832 for 25 years. Finally, on March 12, 1947, a Proposed Regulation was published which provided simply:

> For taxable years beginning after December 31, 1946, that part of the deduction for "losses incurred" which represents an adjustment to "losses paid" for "salvage and reinsurance recoverable" shall include all salvage in course of liquidation and all reinsurance in process of collection.[8]

This Proposed Regulation caused considerable concern within the industry since it was viewed as an attempt to ignore state rules and establish a federal standard. Letters were written to the Commissioner of Internal Revenue by various trade associations representing stock casualty insurance companies and by individual casualty insurers objecting to the Proposed Regulation. They claimed it would require insurance companies to compute their taxable income in a different manner than that used in the Annual Statement and approved by state laws, thus complicating the preparation of tax returns and increasing the administrative burden upon the government. They pointed out the difficulties involved in estimating something as speculative as salvage recoverable and noted that, in the long run, the taxes paid will be substantially the same regardless which method is used.

In apparent deference to these protests from the industry, the Treasury revised its Proposed Regulation to bring it in line with industry practice. Under the final Regulation promulgated in December 1947,[9] which contained language identical to that contained in Section 1.-832–1(c) of the present Treasury Regulations, if any state in which an insurer did business excluded estimates of future salvage recoveries, then, in line with industry practice, such estimates would be excluded for federal income tax purposes. In essence, the Treasury agreed to follow the most conservative state salvage rule with which the insurer had to comply.

Plaintiff's construction is also reinforced by comparison to analogous Treasury Regulations, in which the taxation of insurance companies depends on state law. The term "reserves required by law" is significant in the taxation of life insurance companies both in determining taxable income and in determining whether a company is a life insurance company. (See Sections 801(b), 805 and 810 of the Internal Revenue Code of 1954.) In determining the amount of "reserves required by law," there has never been any suggestion that each state's reserve requirements should be applied only to business done within the particular state. Courts have explicitly recognized that, for federal tax purposes, state rules on reserves apply across the board to all of a company's business, in the same way that such rules are applied by the states themselves. See, e. g., Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S. Ct. 155, 64 L.Ed. 297 (1920); Western & Southern Life Insurance Co. v. Commissioner, 460 F.2d 8 (6th Cir. 1972); Massachusetts Mutual Life Insurance Co. v. United States, 56 F.2d 897, 899, 74 Ct.Cl. 162, 167 (1932); Prudential Insurance Co. v. Herold, 247 F. 681, 685–686 (D.N.J.1918). This principle is also recognized in Section 1.803–1(d) of the Treasury Regulations, 26 C.F.R. 1.803–1(d), which states that:

> * * * A company is permitted to make use of the highest aggregate reserve required by any State or Territory or the District of Columbia in

---

8. Proposed addition to Regulations 111, Section 29.204–2 (the predecessor of current Regulation Section 1.832–1(c)), 12 Fed.Reg. (Part 3) 1688.

9. See T.D. 5593, 1947–2 Cum.Bull. 97, and 12 Fed.Reg. (Part 12) 8229 (1947).

which it transacts business, but the reserve must have been actually held. The salvage adjustment in Regulations Section 1.832–1(c) here in issue is quite similar to the above-quoted Regulation governing the reserve adjustment. Both affect the measure of income, both rely on state law, both refer to the requirements of "any state" in which the company does business, and both look to the most conservative state rule. It is difficult to see, therefore, why one should be applied state-by-state while the other is applied across the board.

If the defendant's state-by-state approach were to be followed, companies would be faced with the question of how to allocate salvage property and salvage estimates among states, since the Regulation provides no formula for making such an allocation. The company, for instance, would not know whether to look to the state in which the salvage will be recovered (if such state could be determined), the state in which the loss occurs, the state in which the property is normally located, or the state in which the premiums were paid. And, if this were determined, it would not know what rules to apply in determining, for example, to what state a recovery or loss belongs. Other Regulations requiring allocation typically provide precise rules for effecting the same. For example, Regulations Section 1.953–2, dealing with the definition of "United States risks," contains elaborate rules for determining whether property is "in the United States," whether a liability "arises out of activity in the United States," and whether an individual is a "resident of

the United States." Regulations Section 1.953–4(c)(1)(ii) provides precise rules for determining, in the case of a controlled foreign corporation, what reserves are deemed to be required under state law. Regulations Section 1.953–4(f) provides specific rules on how to allocate particular items to "United States risks." [10] If a state-by-state allocation had been actually intended with respect to salvage estimates under Regulations Section 1.832–1(c), guidance on the proper method for making such allocation would almost certainly have been provided in the Regulations. Finally, the state-by-state argument is even further discredited by the fact that the District Director's adjustments were made without reference to state rules and regulations, notwithstanding that some states in which plaintiff did business had rules barring the use of salvage estimates. The across the board approach taken by the District Director in this case is clearly inconsistent with the state-by-state approach now argued for by defendant.

We turn now to defendant's second argument. Defendant has asserted that the only circumstance under which state rules may affect the salvage recoverable adjustment for tax purposes is one in which the state law excludes certain items of property from plaintiff's salvage in course of liquidation, but not where such rule flatly forbids the adjustment for so much of plaintiff's salvage in course of liquidation which must be valued by estimation. This assertion is based on defendant's interpretation of the third sentence of Regulations Sec-

---

10. See generally Regulations Sections 1.-953–1 through 1.953–5. For other examples of Regulations providing detailed allocation rules, see, *e. g.*, Regs. Sec. 1.482–2 (allocations among affiliated taxpayers in the case of loans, performance of services, use of tangible property, transfer or use of intangible property, and sales of tangible property); Regs. Sec. 1.819–2 (allocation of the business of a foreign life insurance company between the United States and foreign countries); Regs. Secs. 1.826–4 and 1.826–7 (allocation of ex-

penses by an electing reciprocal underwriter); Regs. Secs. 1.861–1 through 1.-861–8 (determination of United States source income); Regs. Secs. 1.863–1 through 1.863–6 (allocation of items between sources within and without the United States); Regs. Sec. 1.873–1 (allocation of deductions allowed nonresident alien individuals); Regs. Sec. 1.882–3 (b)(2) (allocation of deductions allowed foreign corporations). See also Proposed Regulations Sections 1.864–3 through 1.-864–7, 34 Fed.Reg. 1030 (1966).

tion 1.832–1(c), previously set out in full, which reads:

> \* \* \* Salvage in course of liquidation includes all property (other than cash), real or personal, tangible or intangible, except that which may not be included by reason of express statutory provisions (or rules or regulations of an insurance department) of any State or Territory or the District of Columbia in which the company transacts business.

Defendant contends that the words "except that" refer back to the word "property" and not to the term "salvage in course of liquidation" that precedes it. Thus, says defendant, a company's salvage in course of liquidation will include all property except that property which may not be included by virtue of state law. According to defendant, the exclusion is directed at particular items of property, *e. g.*, a particular item of intangible salvage property which, for whatever reason, will not be recognized by the state insurance department as salvage of the company in course of liquidation. Unfortunately, defendant has been unable to proffer a specific example of the type of state rule contemplated by its argument, such as a state rule which would exclude from salvage some specified kind of property.

Plaintiff is willing to admit that the words "except that" refer back to the word "property," but claims that this adds nothing to the consideration of the case. We agree. In fact, the stipulation between the parties, set forth *supra*, provided that some states in which the plaintiff did business had rules prohibiting the reduction of losses paid for property (potential salvage or subrogation) not yet reduced to cash or cash equivalents. It is, therefore, difficult to understand this contention of the defendant. There is no discernible limitation on the state rule exception in the language of the Regulation itself. It does not refer to "specified items" of property or to "a particular item of intangible salvage property" as defendant would have us believe. Therefore, defendant cannot prevail on its second argument.

■ Affidavits filed with plaintiff's motion indicate that from 1921 on through the years involved in this suit plaintiff never reduced its losses paid, for either federal income tax or state reporting purposes, by estimates of future salvage recoveries or by any salvage not in the form of cash or cash equivalents. They indicate further that the Internal Revenue Service, or its predecessor, the Bureau of Internal Revenue, audited plaintiff's income tax returns for all but a few of those years and never once proposed any adjustment with respect to plaintiff's treatment of salvage prior to the 1966 audit which precipitated this law suit. Based on the above circumstances, plaintiff argues that its construction of the Regulation, and of the underlying statute, is strongly reinforced by decades of administrative practice and therefore must be given great weight. While a demonstrated practice of the Internal Revenue Service is admittedly very important in construing a statute or a regulation, it cannot be inferred from this that the non-action of the Service is entitled to the same weight. If the Service had taken no action with respect to plaintiff while at the same time requiring regional insurers doing business only in states not having any rules on salvage to make salvage estimates, such non-action with respect to the plaintiff might well be entitled to great weight. Here, however, from all that appears in the record, the Service did nothing with respect to anyone. Thus, we do not feel that the non-action on the part of the Service is entitled to the great weight that plaintiff would have us attribute to it, though we feel it is certainly a factor to be considered in reaching a decision in this case.

■ Defendant has argued that plaintiff's construction of the Regulation will nullify the statute and that the federal income tax law should not be construed so as to discriminate between casualty insurers who may or may not do business in one state which excludes es-

timated salvage recoverable. Plaintiff's construction, however, does not nullify the statute. The statute would apply with full force to regional casualty insurance companies which only do business in states which have no restrictive rules on salvage. Moreover, where the exception for restrictive state salvage rules comes into play, plaintiff's interpretation does not confine the Regulation to cash adjustments. Other property in the form of cash equivalents [11] would also constitute salvage for which adjustments would be required. It is true that, under plaintiff's interpretation, the Regulation distinguishes among insurers depending on where they do business (a fact which, to a lesser extent, is also true under both of defendant's interpretations). However, the fact that differences in state laws may produce different federal tax consequences in no way invalidates the Regulations. See, *e. g.,* Poe v. Seaborn, 282 U.S. 101, 117–118, 51 S.Ct. 58, 75 L.Ed. 239 (1930); Florida v. Mellon, 273 U.S. 12, 17, 47 S.Ct. 265, 71 L.Ed. 511 (1927); Early v. Lawyers Title Insurance Corp., 132 F.2d 42, 46 (4th Cir. 1942); Colorado Title Guaranty Co. v. Allan, 212 F.Supp. 341, 343 (D.Colo. 1962).

Finally, we have considered the fact that in the long run it will make no substantial difference in the amount of taxes paid whether salvage recoveries are treated on a "paid" basis or whether estimates are required to be made. Sooner or later salvage recoveries must be taken into income for tax purposes. Thus, there is no question of tax avoidance presented here, but merely a question of when salvage is to be taken into account for purposes of the federal income tax. We are also mindful of the fact that salvage is a relatively minor item when compared with reinsurance, etc. In these circumstances it seems best not to overthrow long-established practice merely to accelerate the receipt of taxes. Such a course of action would cause needless trouble and expense to insurance companies without the realization of any significant offsetting advantage to the government.

For all of the reasons discussed above, we conclude that the plaintiff's interpretation of the Regulation is correct. We hold that Section 1.832–1(c) of the Treasury Regulations permits plaintiff to exclude from its salvage recoverable adjustment *all* salvage not yet reduced to cash or cash equivalents where the rule of any state in which it does business bars the reporting of such salvage. Accordingly, the plaintiff's motion for summary judgment is granted and judgment is entered for plaintiff in the amount of four hundred seventy-seven thousand four hundred seventeen dollars and fifty-one cents ($477,417.51) plus statutory interest thereon as provided by law.

---

11. Cash equivalents, or so-called "admitted assets" other than cash, means property which is reasonably available to pay claims. Thus, an insurer would have to include such noncash items as escrowed collateral to which it was entitled upon payment on a real estate construction bond or undertaking, its rights to a temporarily frozen account in a bank in liquidation, and its rights to stock or securities recovered after payment of a loss on a fidelity bond, for example.