ALLSTATE INSURANCE COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 544–86T.

United States Claims Court.

April 26, 1990.

Michael M. Conway, Chicago, Ill., atty. of record, for plaintiff; Patrick A. Heffernan, Michael R. Schlessinger, and Hopkins & Sutter, Chicago, Ill., of counsel.

Robert J. Higgins, Washington, D.C., with whom was Asst. Atty. Gen. Shirley D. Peterson, Washington, D.C., for defendant.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion for partial summary judgment and plaintiff's cross-motion for summary judgment. Plaintiff claims reimbursement for 3 years of tax overpayment, based on an application of the tax benefit rule to salvage and subrogation recoveries. Defendant contests the applicability of the rule and contends the statutory mechanism

for taxation of insurance companies exclusively provides for these recoveries. Furthermore, defendant argues that even if the rule is applicable, plaintiff has failed to prove a sufficient relationship between the loss year and the recovery year.

### Factual Background

Plaintiff is an insurance company incorporated under the laws of the State of Illinois and subject to taxation pursuant to 26 U.S.C. §§ 831, 832 (1954),[1] as in effect in the years at issue.[2]

The following example, which describes the transactions and accounting of a hypothetical claim, is provided to help understand how plaintiff managed its insurance claims under the taxation rules for insurance companies. To begin, the first transaction of importance would be an event, such as an accident or a theft, which suggests to the policyholder that he may have coverage under his policy. Next, a claim would be filed by the policyholder. This may not happen in the same year as the event. Once the claim is reported, the insurance company would evaluate the claim and make an addition to its "unpaid loss" reserve. Again, there is no guarantee that the claim made and the addition to the "unpaid loss" reserve occur in the same year. If the claim is paid, the amount of the payment, which may be different than the amount of the claim, would be released from the "unpaid loss" reserve and added to "paid losses." Finally, there may be a subrogation recovery. The subrogation recovery may differ in amount from the

claim or the payment; however, whatever the amount, it would reduce the "paid losses" in the year it was received.

In reporting its income tax, plaintiff, like other insurance companies, is provided a "losses incurred" deduction, which reduces its premium income. The "losses incurred" deduction formula contains the two components mentioned above, "losses paid" and "unpaid losses." These are added together and then subtracted from premiums as part of the calculation to determine taxable income. It is the "losses paid" component that is the focus of dispute in the instant case.

The various insurance policies that plaintiff wrote provided that plaintiff would have the policyholder's right to recover against third parties whenever an insurance claim was paid. Plaintiff became entitled to either salvage or subrogation recoveries[3] (subrogation recovery) on these claims. The statutory formula requires the adjustment of "losses paid" for subrogation recoveries. Each year it reduced its deduction for "losses incurred" by the cash collections from these subrogated recoveries during the year.

In 1969, plaintiff calculated its taxable income pursuant to § 832. Plaintiff had premium earned income of $1,314,106,-387.00. From that was subtracted a "losses incurred" deduction[4] of $852,173,752.00. The "losses incurred" deduction consisted of "paid losses" of $748,421,296.00, plus an increase in "unpaid losses" of $103,752,-456.00. Plaintiff took its "losses incurred"

---

1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year at issue.

2. Overpayment is claimed for the years 1971, 1978, and 1980. The parties have stipulated that a ruling on the 1971 claim will be dispositive of the others.

3. "Salvage" consists of the money generated by plaintiff from the sale of the damaged property items that plaintiff had paid a claim on and consequently taken title. "Subrogation" is the amount received by plaintiff from pursuing a claim against a third party that the policyholder could have sued upon.

4. Section 832(b)(5) provides:

　　**(5) Losses incurred.**—The term "losses incurred" during the taxable year on insurance contracts computed as follows:

　　(A) To losses paid during the taxable year, add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year.

　　(B) To the result so obtained, add all unpaid losses outstanding at the end of the taxable year and deduct unpaid losses outstanding at the end of the preceding taxable year.

into account in computing its total underwriting income.

Plaintiff also took net capital gain [5] of $40,277,795.00 into account in computing its total investment income. Taking its total underwriting income, total investment income, and other amounts into account, including other deductions in addition to the "losses incurred," plaintiff had total taxable income in 1969 of $38,387,656.00.

In 1969, plaintiff calculated its federal income tax liability using the alternative tax calculation for corporations pursuant to § 1201.[6] Plaintiff reported a corporate income tax liability of $10,538,901.00. After adjustments, plaintiff paid $10,174,540.00. Using the latter number, if plaintiff "losses incurred" deduction had been lowered by $1,790,139.00, plaintiff contends that its tax would not have been higher than the amount it actually paid in 1969. Plaintiff concludes that a $1,790,139.00 portion of its 1969 "losses incurred" did not result in a reduction of its tax.

For the taxable year ending December 31, 1971, plaintiff again calculated its taxable income pursuant to § 832. Under the annual statement method of accounting,[7] plaintiff took into account its cash subrogation recoveries actually received during 1971 in computing its "paid losses" for that taxable year. Plaintiff's premium earned in the sum of $1,824,176,469.00 was reduced by a "losses incurred" deduction of $1,174,883,502.00. Subrogated recoveries for that year were $2,720,632.00. In 1971, plaintiff reported a corporate income tax liability of $15,680,078.00. This was subsequently adjusted after the 1971 return was filed to indicate tax due of $1,959,700.00, which has been paid in full by plaintiff.

Nearly 10 years later, plaintiff filed a claim for refund for the taxable year 1971 on May 15, 1981. Plaintiff sought to exclude $2,720,632.00 of salvage and subrogation recoveries received in 1971 from its 1971 income tax return on the basis that such recoveries related to 1969 "losses incurred" for which plaintiff received no tax

---

**5.** This is computed by subtracting net short term capital loss from net long term capital gain.

**6.** Section 1201, entitled "Alternative tax", provides in part:

  (a) **Corporations.**—If for any taxable year a corporation has a net section 1201 gain, then, in lieu of the tax imposed by sections 11, 511, 821(a) or (c), and 831(a), there is hereby imposed a tax (if such tax is less than the tax imposed by such sections) which shall consist of the sum of a tax computed on the taxable income reduced by the amount of the net section 1201 gain, at the rates and in the manner as if this subsection had not been enacted, plus—

  (1) in the case of a taxable year beginning before January 1, 1975—

  (A) a tax of 25 percent of the lesser of—
  (i) the amount of the subsection (d) gain, or
  (ii) the amount of the net section 1201 gain, and

  (B) a tax of 30 percent (28 percent in the case of a taxable year beginning after December 31, 1969, and before January 1, 1971) of the excess (if any) of the net section 1201 gain over the subsection (d) gain; and

  (2) in the case of a taxable year beginning after December 31, 1974, a tax of 30 percent of the net section 1201 gain.

To calculate the "Alternative Tax" pursuant to § 1201, plaintiff divides taxable income into two components: (i) taxable income less net

capital gain (ordinary income) and (ii) net capital gain. The ordinary income component is taxed at ordinary corporate rates, while the net capital gain component is taxed at a lower rate. These are added together for the "Alternative Tax." In 1969, plaintiff's ordinary income component was a negative number. Consequently, there was no tax owing on that component. This is a principle area of dispute: Plaintiff claims essentially that it could have added additional subrogation recoveries as a component in formulating its ordinary income in 1969 and its taxes would not have increased. Because of this, plaintiff argues that the tax benefit rule allows plaintiff to exclude the 1971 subrogated recoveries related to the deduction in 1969.

  It is also worth noting that if § 1201 were not applicable here, capital and ordinary income would not be differentiated. These amounts would be combined and a negative number would not be produced.

**7.** Section 832(b)(1) provides:

  (1) **Gross income.**—The term "gross income" means the sum of—

  (A) the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection, *computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners,* [emphasis added.]

*See* Treas.Reg. § 1.832–4(c).

benefit.[8] The Internal Revenue Service denied plaintiff's claim and issued a statutory "Notice of Disallowance," dated August 28, 1984.

On August 27, 1986, plaintiff filed a complaint in this court.[9] Plaintiff claims entitlement to exclude $1,790,139.00 of the 1971 subrogation recoveries in computing its salvage and subrogation recoveries offset to 1971 "losses paid". Such an exclusion, by increasing plaintiff's 1971 "losses incurred" deduction, thereby decreases plaintiff's 1971 tax liability. Based on this analysis, plaintiff claims the following sums as tax overpayments for the indicated years: $377,751.00 (year ending December 31, 1971); $1,572,742.00 (year ending December 31, 1978); $1,019,306.00 (year ending January 31, 1980).[10]

On February 17, 1989, defendant filed a motion for partial summary judgment. On March 17, 1989, plaintiff filed a cross-motion for summary judgment. Oral argument was held on September 27, 1989. Post-trial briefs by the parties were filed by October 30, 1989. On December 7, 1989, the parties filed a stipulation for partial dismissal with prejudice for paragraphs 17 through 29, plus part of paragraph 30, of the complaint.

Plaintiff argues that subrogation recovery is gross income despite the § 832(b)(5) deduction statute and, thus, the tax benefit rule is applicable to allow the subrogation recovery proceeds to reduce the tax liability in 1971. In the alternative, plaintiff submits that even if subrogation recovery is not gross income, the tax benefit rule is still applicable since its 1969 income tax was not reduced by $1,790,139.00 in the "losses incurred" deduction for that year.

Plaintiff alleges that it is entitled to these sums because of the effect of the tax benefit rule on the "losses paid" deductions. According to plaintiff, the tax benefit rule works by creating a recovery exclusion for subrogated recoveries received in the years for which a tax refund is claimed, where a sufficient relationship exists between the initial "losses incurred" and the subsequent subrogated recoveries. Plaintiff submits that because the "losses incurred" and subrogated recoveries are all part of one transaction, the subrogated recoveries are now excluded from the tax year at issue, and the tax liability of plaintiff for the years where a tax refund is claimed is decreased by the amounts claimed by plaintiff.

Defendant argues that the "losses paid" subsection of § 832(b)(5) and consequently the "losses incurred" section require inclusion of *all* subrogated recoveries in their computation; therefore, subrogation recoveries are not income, cannot be treated as such, and the tax benefit rule is inapplicable. Furthermore, defendant contends that even if the rule is applicable, plaintiff has failed to prove a sufficient relationship exists between the loss year and the recovery year.

### Discussion

#### A. Jurisdiction

This is a suit to recover overpayments of federal income taxes and as such this court has jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491 (1982). *See Consolidated Edison Co. of N.Y. v. United States,* 133 Ct.Cl. 376, 135 F.Supp. 881 (1955), *cert. denied,* 351 U.S. 909, 76 S.Ct. 694, 100 L.Ed. 1444 (1956), *reh'g denied,* 352 U.S. 1019, 77 S.Ct. 552, 1 L.Ed.2d 562 (1957), *reh'g denied,* 364 U.S. 898, 81 S.Ct. 218, 5 L.Ed.2d 192 (1960).

#### B. Summary Judgment

Summary judgment is appropriate where the pleadings raise no genuine dispute as to any material fact and, as a matter of law, the moving party is entitled to judg-

---

**8.** The entire amount of the subrogated recoveries, $2,720,632.00, was included, pursuant to § 832, in plaintiff's "paid loss" computation for that year.

**9.** On December 7, 1989, the parties filed a joint stipulation for partial dismissal with prejudice for paragraphs 17 through 29 of the complaint, plus part of paragraph 30. In consequence, the claims based on these paragraphs are no longer before the court. The tax benefit issue here is dispositive of the rest of the case.

**10.** *See supra* n. 2.

ment. RUSCC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the non-movant's case. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences runs. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir. 1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

■ The issue in this case is: Whether plaintiff may exclude, pursuant to the tax benefit rule,[11] $1,790,139.00 of salvage and subrogation recoveries received in 1971 from its "losses incurred" deduction computation for that year? The burden of proof in a tax refund suit rests with plaintiff, who must establish, by a preponderance of the evidence, any amount it is entitled to recover. *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935); *Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293, *modified*, 284 U.S. 599, 52 S.Ct. 264,

76 L.Ed. 514 (1932); *Bob Jones Univ. v. United States*, 229 Ct.Cl. 340, 350, 670 F.2d 167 (1982); *Rosenberg v. United States*, 3 Cl.Ct. 432, 435 (1983).

## I.

### *The Tax Benefit Rule*

■ The tax benefit rule works as a compromise between the ideal of measuring income in transactional parity and the bureaucratic necessity of annual reporting. In measuring and taxing income, the federal income tax format employs an annual accounting concept. *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 365–66, 51 S.Ct. 150, 152, 75 L.Ed. 383 (1931). In response to this, "the tax benefit rule [is] a judicially developed principle that allays some of the inflexibilities of the annual accounting system." *Hillsboro Nat'l Bank v. Commissioner*, 460 U.S. 370, 377, 103 S.Ct. 1134, 1140, 75 L.Ed.2d 130, *on remand Bliss Dairy, Inc. v. United States*, 704 F.2d 1167 (9th Cir.1983).

In addition:

The basic purpose of the tax benefit rule is to achieve rough transactional parity in tax, * * * and to protect the Government and the taxpayer from the adverse effects of reporting a transaction on the basis of assumptions that an event in a subsequent year [which] proves to have been erroneous. * * * [T]he tax benefit rule will "cancel out" an earlier deduction only when a careful examination shows that the latter event is indeed fundamentally inconsistent with the

---

**11.** Plaintiff contends that the sums at issue are "recovery exclusions" pursuant to the codification of the exclusionary aspect of the tax benefit rule. Section 111 provides in part:

(a) **General rule.**—Gross income does not include income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount.

(b) **Definitions.**—For purposes of subsection (a)—

\* \* \* \* \* \*

(4) **Recovery exclusion.**—The term "recovery exclusion," with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regu-

lations prescribed by the Secretary, or his delegate of the deductions or credits allowed, on account of such bad debt, prior tax, or delinquency amount, which did not result in a reduction of the taxpayer's tax under this subtitle (not including the accumulated earnings tax imposed by section 531 or the tax on personal holding companies imposed by section 541) or corresponding provisions of prior income tax laws (other than subchapter E of chapter 2 of the Internal Revenue Code of 1939, relating to World War II excess profits tax), reduced by the amount excludable in previous taxable years with respect to such debt, tax or amount under this section.

In addition, the judicial constructions of this rule are applicable. See n. 12.

premise on which the deduction was initially based. * * * In some cases, a subsequent recovery by the taxpayer will be the only event that would be fundamentally inconsistent with the provision granting the deduction.

460 U.S. at 383–84, 103 S.Ct. at 1143.

The rule itself has two aspects, inclusion and exclusion. *Hillsboro* only involved the inclusionary aspect. In that case, the government sought to include as income payments of state taxes by the Hillsboro Bank. These taxes were deducted when paid pursuant to § 164(e) but later were refunded to the bank's shareholders by the state. There, the inclusionary rule might be stated as "recovery of an item previously deducted must be included in income." *Hillsboro* did not involve the exclusionary aspect, which might be described as "that portion of a recovery not resulting in a prior tax benefit, can be excluded from income." It is important to note that the exclusionary aspect becomes relevant only after the inclusionary aspect is first applicable.

The present case involves application of the tax benefit rule's exclusionary aspect.[12] To exclude a recovery under § 111, a taxpayer must show generally that (1) he has a "recovery exclusion" with respect to a given deduction, and (2) the later event's recovery in question is sufficiently related to the recovery exclusion, defined in § 111(b)(4) as "the amount, determined in accordance with regulations prescribed by the Secretary or his delegate, of the deductions or credits allowed * * * which did not result in a reduction of the taxpayer's tax under * * * subtitle [A of the Code] * * *."

Plaintiff asserts that the amount of its recovery exclusion is the portion of its 1969 losses incurred which did not "result in a reduction of the taxpayer's tax under subtitle A of the Code." Plaintiff's 1969 tax liability was computed under § 1201's alternative tax which is part of subtitle A of the Code. Plaintiff claims that a $1,790,139.00 portion of plaintiff's losses incurred did not reduce the amount of the § 1201 tax due. Therefore, pursuant to the tax benefit rule, plaintiff claims a recovery exclusion of $1,790,139.00.

Plaintiff invites this court to read *Hillsboro* as taking a "generally expansive view" of the tax benefit rule, specifically, "that (1) the codification of the tax benefit rule in § 111 coexists with, and does not limit, the extra-statutory elements of the tax benefit rule, (2) 'undesirable formalism' should not be introduced in the application of the tax benefit rule, and (3) the application of the tax benefit rule must always be considered on a case-by-case basis, with a 'court * * * considering the facts and circumstances of each case in the light of the purpose and function of the provisions granting the deductions' " [citing *Hillsboro* at 382–85, 103 S.Ct. at 1142–44]. In support, plaintiff refers extensively to *American Financial Corp. v. Commissioner*, 72 T.C. 506 (1979), which plaintiff submits contains relevant, identical facts to its own case, plus analysis consistent with the guidelines for applying the tax benefit rule as later enunciated by the Supreme Court in *Hillsboro*.

In *American Financial*, the taxpayer's subsidiary, Great American Insurance Company (American), was a stock property and casualty insurance company which computed its income under § 832. A $2,411,452.00 portion of American's pre-1960 "losses incurred" deductions did not produce a tax benefit because, in those

---

**12.** Plaintiff urges the court to note the Supreme Court's expansive application of the tax benefit rule, which we do: "Yet this court has held, *Dobson v. Commissioner*, 320 U.S. 489, 505–506 [64 S.Ct. 239, 248, 88 L.Ed. 248] (1943), and it has always been accepted since, that § 111 does not *limit* the application of the exclusionary aspect of the tax benefit rule. On the contrary, it lists a few applications and represents a general endorsement of the exclusionary aspect of the tax benefit rule to other situations within the inclusionary part of the rule. The failure to mention inconsistent events in § 111 no more suggests that they do not trigger the application of the tax benefit rule than the failure to mention the recovery of a capital loss suggests that it does not, see *Dobson, supra.*" *Hillsboro Nat'l Bank v. Commissioner*, 460 U.S. 370, 388, 103 S.Ct. 1134, 1145–46, 75 L.Ed.2d 130 (1983), *on remand to Bliss Dairy, Inc. v. United States*, 704 F.2d 1167 (9th Cir.1983).

years, American had net operating losses of that amount, which subsequently expired unused. American used the annual statement method to account for its salvage and subrogation recoveries. When it received $2,411,452.00 of such recoveries in 1966 with respect to losses which had been included in the pre–1960 "losses incurred" deductions, American excluded those recoveries under § 111.

The Commissioner in *American Financial* argued that the recoveries were not directly related to the losses deducted without tax benefit. The Tax Court rejected this argument and held: "We think that a sufficiently direct relationship exists between the salvage and subrogation proceeds and the initial losses incurred deduction to justify an exclusion pursuant to § 111." The court explains:

> Section 832(b)(5) does not provide that salvage can be used only as an offset, and we think it unlikely that the respondent would, under different circumstances, so argue. *Technical niceties aside, salvage and subrogation proceeds are items of gross income.*

72 T.C. at 514 (emphasis added).

Plaintiff asserts that the relationship between the 1971 subrogation recoveries and the 1969 "losses incurred" in this case is identical to the relationship in *American Financial,* where American did not receive a tax benefit from its pre–1960 "losses incurred". Plaintiff charges that it received in 1971 individual subrogation recoveries related to its 1969 loss payments, just as American received in 1966 such recoveries related to its pre–1960 losses. Plaintiff urges the court to follow *American Financial.*

In response, defendant's primary argument is that the statutory provisions *exclusively* provide for the insurance companies' subrogation recoveries, and they have done so

for decades.[13] Defendant contends that "[i]t is well accepted as a matter of law and the reporting practices of insurance companies, that 'subrogation recoveries' are an element of 'salvage and reinsurance recoverable,'" citing *Continental Insurance Co. v. United States,* 200 Ct.Cl. 552, 474 F.2d 661 (1973); *Allstate Fire Insurance Co. v. United States,* 223 Ct.Cl. 652, 650 F.2d 288 (1980) (trial division opinion reported in 80–1 USTC ¶ 9391, p. 84,037). Defendant argues that there is no consideration in the calculation of the "losses incurred" deduction, § 832(b)(5), regarding any aspect of the subrogation recovery except its receipt. Defendant highlights that the statute does not concern itself with the taxable year of the underlying loss which predicated the subrogation recovery. Consequently, defendant concludes that since the statutory formula requires receipt of these sums on an annual basis, the tax benefit rule is inapplicable because it requires more than one tax year for its operation.

*Continental Insurance* establishes that use of the term "salvage" in § 832(b)(5) includes subrogation recoveries. Relying on the Supreme Court's decision a century ago, in *Phoenix Insurance Co. v. Erie Transp. Co.,* 117 U.S. 312, 321, 6 S.Ct. 750, 753, 29 L.Ed. 873 (1886), the court held:

> The statute, however, does not define the term "salvage * * * recoverable" or even describe what is meant by salvage. It is therefore necessary to look beyond the statute to the applicable regulations and to insurance law. As pointed out earlier, *salvage includes all tangible property and subrogation claims acquired by an insurance company after indemnifying its insured under contracts of insurance.*

200 Ct.Cl. at 558 (emphasis added).

In construing Treas.Reg. § 1.832–1(c), the Court of Claims concluded that:

> tion was allowed for 'losses incurred,' which meant losses paid during the year plus the net increase in 'unpaid losses' outstanding at the end of the year. Revenue Act of 1921, ch. 136, 42 Stat. 227, § 246(b)(5) & (6)." *Alinco Life Insurance Co. v. United States,* 178 Ct.Cl. 813, 832, 373 F.2d 336 (1967).

**13.** Since the Revenue Act of 1921, ch. 136, 42 Stat. 227, Congress has provided for a "losses incurred" deduction. The language has virtually remained the same through seven reenactments in Revenue Acts and through the Internal Revenue Codes of 1939, 1954, and 1986. As the Court of Claims has noted: "Furthermore, in determining 'underwriting income,' a deduc-

[C]ash received during the year with respect to salvage is taken into account as a reduction in computing losses paid during the year, before this item is adjusted by estimates of future salvage recoveries.

200 Ct.Cl. at 559.

Subrogation recoveries are included pursuant to the statutory formula in § 832(b)(5), which requires computations on a yearly schedule. Since all cash subrogation, from whatever year the claim was paid, is included in the annual tax return of the year received,[14] the inclusionary aspect of the tax benefit rule is not applicable. Consequently, neither is the exclusionary aspect involved. Therefore, plaintiff may not invoke the exclusionary aspect of the tax benefit rule under these circumstances.

Plaintiff comments on *American Financial's* ruling, that subrogation "is income regardless of how it fits formally into § 832(b)(5)'s mechanical formula," and asserts that this "was a *critical step* leading to its holding that subrogation was excludable from the section 832(b)(5) computation under the tax benefit rule (emphasis added)."[15] This court agrees with plaintiff that it was necessary for the *American Financial* court to make this determination in order to find the tax benefit rule applicable. However, unlike the Tax Court in *American Financial,* this court does not have the option of taking this "critical step" and ignoring the "technical niceties" of the tax statutes here, since we are bound by several Court of Claims decisions which read § 832 and the applicable Treasury Regulations as directing the treatment of subrogated recoveries, along with "unpaid losses", as independent *components* that together formulate the "losses incurred" deduction. *See South Corp. v. United States,* 690 F.2d 1368 (Fed.Cir.1982) (Court of Claims cases are binding prece-

dent until overruled by an *en banc* decision of the United States Court of Appeals for the Federal Circuit). This treatment by the Court of Claims is necesarily inconsistent with plaintiff's tax benefit claim as supported by *American Financial.*

The necessity of a fundamental inconsistent event for applicability of the tax benefit rule is stated by the Supreme Court in *Hillsboro:*

[T]he tax benefit rule will "cancel out" an earlier deduction only when a careful examination shows that the later event is indeed fundamentally inconsistent with the premise on which the deduction was initially based.

460 U.S. at 385, 103 S.Ct. at 1144.

The tax benefit rule serves as a corrective measure for inconsistent and unexpected events, *Hillsboro,* 460 U.S. at 383, 103 S.Ct. at 1143, unlike the events here. The reserve accounting method of § 832(b)(5) establishes that subrogation recoveries are foreseen and not fundamentally inconsistent events as a matter of law. Defendant notes that subrogation recoveries are expected events since they are reported in insurance company's annual reports as required by state laws. In addition, the insurance company's right of subrogation is asserted in the standard language found in every one of the automobile policies.

Finally, defendant remarks that if Congress wanted to include subrogation recoveries as an item of income, and facilitate the application of the tax benefit rule, Congress certainly could have. Section 832(b)(1) defines gross income in considerable detail. While the omission does not conclusively prove defendant's position, nevertheless, the court finds it persuasive.

The court notes defendant's multiple cites and discussions to the case of *Home Mutual Insurance Co. v. CIR,* 639 F.2d

**14.** The Court of Claims explicitly differentiates between gross income and subrogation recoveries in describing the accounting process in *Allstate Fire Insurance Co. v. United States,* 223 Ct.Cl. 652 (1980) (trial division opinion reported in 80–1 USTC ¶ 9391, p. 84,037, 84,042) ("the cash received by the insurance company [by a subrogation recovery] reduces the net payment by the company on that particular claim and,

under the rules of statutory accounting, the company must reduce its 'losses paid' by the amount of cash recovery").

**15.** Reply Brief of Allstate Insurance Company in Support of its Cross Motion for Partial Summary Judgment and in Opposition to Defendant's Motion for Partial Summary Judgment p. 14.

333 (7th Cir.1980), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3005, 69 L.Ed.2d 388 (1981), in support of its criticism of the *American Financial* decision. However, we need not entertain this case, because its discussion of *American Financial* was mere *dicta.* In addition, *Home Mutual* was not a decision of our reviewing courts and, thus, is not controlling precedent. Nevertheless, this court finds the criticism valid.

The Court of Claims has propounded that insurance company taxation statutes are customized and unique. *Maryland Savs–Share Insurance Corp. v. United States,* 226 Ct.Cl. 487, 499–50, 644 F.2d 16 (1981) ("The terminology and concepts of the Internal Revenue Code and Regulation provisions dealing with casualty insurance are based directly on industry usage developed in response to state regulation (citations omitted) * * *. Section 831 of the Internal Revenue Code imposes a tax on the income of insurance companies (other than life or mutual) in lieu of the tax imposed by § 11 of the Code on other corporations)." This court will heed the words of the Supreme Court, which cautions that "the tax benefit rule must be applied on a case-by-case basis. A court must consider the facts and circumstances of each case in the light of the purpose and function of the provision granting the deductions." *Hillsboro,* 460 U.S. at 385, 103 S.Ct. at 1144. Here, the relevant sections of the tax code have been designed in response to insurance companies' accounting needs; they have been interpreted by the Court of Claims as directing subrogation recoveries as a component of a deduction. This court declines to disturb this relationship, designed by Congress, between the "losses paid" and the "unpaid losses" components of the "losses incurred" deduction. We need not go any

farther. For plaintiff now to say, after these statutes have successfully functioned in plaintiff's industry for decades, that these statutes are incompatible with plaintiff's actual business practices, is nothing short of incredible. "[W]e are being asked to substitute a rule of our own formulation for the one Congress has prescribed." *Agway, Inc. v. United States,* 207 Ct.Cl. 682, 692, 524 F.2d 1194 (1975). This court declines to do so.

## II.

### *Proof of Sufficient Relationship*

■ The tax benefit rule requires establishment of a sufficiently "direct" relationship between a prior loss or deduction and a subsequent event.[16] *Hillsboro,* 460 U.S. at 383, 103 S.Ct. at 1143; *American Financial Corp.,* 72 T.C. at 510. Assuming *arguendo,* that the tax benefit rule could be applicable to plaintiff, the issue raised is: Whether plaintiff's 1971 subrogation recoveries are sufficiently related to its 1969 "losses paid" to be excludable under § 111?

In support of its claim that the relationship is sufficient, plaintiff submits two attachments, plus affidavits, to its cross-motion for summary judgment. Attachment 5 is "a selection of certain data from the master computer tapes"; it is a large document that provides an accident year, 1969, and a claim year, 1969 or 1970, for 1971 subrogation recoveries. This document does not prove the year of the paid loss, which could be 1969, 1970 or 1971. Plaintiff attempts to approximate the paid loss with attachment 6, which charts plaintiff's experience in subrogation recovery for the years 1976 through 1980. In other words, instead of providing account records that

---

**16.** This requirement is also found in Treas.Reg. § 1.111–1(a)(2), which provides:

(2) **Definition of "recovery".** Recoveries result from the receipt of amounts *in respect of* the previously deducted or credited section 111 items, such as from the collection or sale of a bad debt, refund or credit of taxes paid, or cancellation of taxes accrued * * * (emphasis added).

*See also* Elliott, *The Tax Benefit Rule: A Common Law of Recapture,* 39 Sw.L.J. 845, 859 (1985) ("The tax benefit rule will not always

apply merely because some later event is fundamentally inconsistent with the earlier deduction. Rather, a nexus must exist between the later and earlier events. The IRS has indicated that a direct relationship must exist between the event that constitutes the loss and the event that constitutes the recovery. For example, receiving money from a debtor on a second debt, after the taxpayer had previously written off the first debt as worthless, would not invoke the tax benefit rule if the money recovered were not part of the first debt").

show, for example, that Claim A was paid on September 20, 1969, and plaintiff received a subrogation recovery for it on January 5, 1971, plaintiff relies on attachment 6, which, in addition to being mere estimates and projections, does not pertain to the years at issue. The court finds that these attachments are insufficient for purposes of the tax benefit rule.[17]

Furthermore, in *American Financial,* the parties stipulated that the amounts recovered were connected to claims for which no tax benefit was claimed. There is no stipulation on this critical fact in the instant case. It is evident that plaintiff cannot trace monies recovered in 1971 to monies paid in claims in 1969. Consequently, *American Financial* is distinguishable from the case at bar by the inability of plaintiff here to prove a direct relationship between any "losses paid" or additions to its unpaid loss reserve in 1969 and the subrogation recoveries in 1971. Plaintiff states that the reason why it is presenting a computer printout of the 1971 subrogation recoveries and not any original documents from 1969 or 1971 is that these documents no longer exist ("other more detailed information relating to the transactions (e.g., claims forms, checks, etc.), may have, at some time, been discarded");[18] ("[t]he reason, very frankly, why we don't have the actual figures here is that the computer tapes and records were [sic] either no longer existed or were [sic] no longer were usable when now, 18 years later, people went to try to do the calculations").[19] This failure to provide evidence is another rationale for the inapplicability of the tax benefit rule here, so many years after the tax year at issue.[20] Finally, al-

lowing plaintiff to apply to tax benefit rule with these logically incomplete attachments is tantamount to allowing it to pick and choose whether subrogated recovery will be used as income or as a deduction, and in what year such treatment will occur.

### Conclusion

For all the above reasons, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied. Accordingly, the Clerk is directed to dismiss plaintiff's complaint. No costs.

---

17. In so holding, the court need not address the parties contentions concerning the admissibility of these attachments for purposes of summary judgment.

18. Reply Brief of Allstate Insurance Company in Support of its Cross Motion for Partial Summary Judgment and in Opposition to Defendant's Motion for Partial Summary Judgment p. 20.

19. Transcript of Oral Arguments, September 27, 1989 pp. 39–40.

20. Although *dicta,* this court finds the following salient and persuasive:

Application of the tax benefit rule's exclusionary aspect years after the expiration of the loss carryovers effectively allows [a] taxpayer to offset recoveries that by the terms of the *statute and regulations,* not by application of the tax benefit rule, should increase income. Use of the tax benefit rule would, in effect, abrogate the statutory limitation prohibiting a taxpayer from carrying forward net operating losses indefinitely and allow a taxpayer to revive long-expired deductions in the year of recovery. *Home Mutual Insurance Co. v. Commissioner,* 639 F.2d 333, 345–46 n. 38 (1980).